## McKinney *v.* Pierce.

A master's report will not be presumed to be correct, but must be supported by evidence, unless such evidence is dispensed with by statute.

Section 76, p. 844, R. S. 1843, required a master to take down the evidence upon an examination before him, only when required to do so by one of the parties.

The intention of said section was to permit the parties to put the evidence upon the record, for the purpose of impeaching, and not of supporting, the report.

The master's report, under said section, like the verdict of a jury, will be presumed to be right until the contrary is shown; and a balance reported in favor of a party will be regarded by the chancellor as a fact established by proof.

Saturday,
December 2.

APPEAL from the *Grant* Circuit Court.

Hovey, J.—On the 10th of *May*, 1847, *McKinney* and *Pierce* entered into a written contract, for the purpose of selling goods and merchandise, which reads as follows:

"Articles of agreement made and entered into by and between *Henry Pierce* of *Grant* county, and *Daniel Robertson McKinney* of *Wabash* county, both of the state of *Indiana*. The said *Pierce* agrees to furnish said *McKinney* with a common stock of goods or merchandise, delivered in *Wabash* county, *Indiana*. The said *McKinney*, on his part, agrees to furnish himself as a hand to take charge of the stock of goods, keep all books and accounts, sell and buy to the best of his skill and ability, and apply all the proceeds of said store to the payment of the debts that may

accrue in the course of trade, except his own boarding, &c., to be continued as long as both parties are disposed, and then said *McKinney* takes one-half of all the profits he has made in the course of trade, after the expenses and debts of said establishment are paid, in full for his services, and said *Pierce* takes the other half, and the capital invested by him out of his own funds, if any. *May* 10, 1847.— [Signed] *Henry Pierce. D. R. McKinney.*"

Goods were furnished by *Pierce*, amounting to about 8,086 dollars and 57 cents in value, and placed under the sole management of *McKinney*, who carried on business under the contract, until the 19th of *July*, 1848, when their store-room, with a part of the goods, was destroyed by fire.

After the fire, *Pierce* demanded an account, which *McKinney* refused to render. The bill and amended bill set forth the above facts, which are admitted by the answer. The pleadings are voluminous, but the only issues which require examination are those which relate to the profits, and the condition of the accounts between the parties. Several depositions were taken and published, and at the *April* term, 1852, the Circuit Court made an interlocutory decree, in which, among other things, it was decreed that the loss by fire was the sole loss of *Pierce*, and that *McKinney* was entitled to one-half of the net profits of the sales, without regard to that loss.

A master was appointed to take and state an account of all the matters between the parties, in accordance with the decree, and in making said account he was to use the testimony and exhibits in the cause, and the parts of the answer responsive to the bill. The decree further proceeds: " And for the better investigation of which accounts, the parties are to produce before such master, upon oath or affirmation, all books or papers and writings in their custody and power relating thereto, and are to be examined upon interrogatories as said master shall direct, who, in making said account, is to make unto said parties all just allowances, and report to the Court at the next term, what, upon the balance of said account, shall appear to be due from either party to the other."

In pursuance of the directions of this decree, the master caused the parties, with their books, &c., and witnesses, to come before him. The parties were examined under oath, but no report of their examination or the contents of the books and papers exhibited was taken down by the master. At the next term, the master reported a balance of 546 dollars and 75 cents due to *Pierce.* Exceptions were filed to the report, and overruled, and the Court rendered a decree in favor of *Pierce* for the amount reported. From that decree *McKinney* appealed to this Court.

The counsel for *McKinney* make three points—

1. A master's report will not be presumed to be correct, but must be supported by evidence.

This, no doubt, was the law as laid down by *English* chancellors and by our own Courts, independent of legislation; but by the R. S. 1843, permission is given to masters, in cases like this, to examine the parties, either orally or by interrogatories; and sec. 76, p. 844, provides that "the evidence upon any such examination, shall be taken down by the master, or by some other person by his order in his presence, if either party require it, in order that the same may be used by the Court if necessary."

The plain and evident meaning of this section is, that the master is not to report the evidence unless it be required. Under this section, he would have no authority to report a long string of interrogatories and answers, causing the parties additional expense, without being requested to do so. The intention of the section was to permit the parties to cause the evidence to be spread upon the record, for the purpose of impeaching the report, and not for the purpose of supporting it. Any other construction would force the parties in all cases back upon the old rule, and require the evidence to be reported. Such could not have been the intention of the general assembly, for such was the law before the enactment of this section.

The cases of *Greenman* v. *Pattison*, 8 Blackf. 465, and *Lacoss* v. *Keegan*, 2 Ind. R. 406, cited by the counsel for the plaintiff, and regarded as conclusive as to the construction of sec. 76 *supra*, have but little to do with it, as they

were both governed by sec. 41, p. 461, R. S. 1843, in regard to references made to masters to ascertain whether mortgaged premises were susceptible of division. There is but little analogy between those cases and the one before us. There, the reference is made to the master, without regard to the presence or absence of the parties, who really have nothing to do with the question referred; but here, the whole business of the master may be with the examination of the parties alone.

2. " If the principle upon which a master's report is made be erroneous, the chancellor should correct it even without exception."

This proposition is the law, but we can not perceive its applicability in this case. Seeming inconsistencies may appear on the face of the master's report, which the examination of the parties might fully explain. We will not presume error where it can be legally avoided, and as the complaining party has failed to show what the facts were upon which the report was based, he must suffer the consequences.

3. " The record must show the proof sustaining the decree, or it will be reversed."

This position, as a general rule, is correct; but we think that it is somewhat modified by section 76, so far as relates to the class of cases under consideration. The master's report, under this section, like the verdict of a jury, will be presumed right until the contrary is shown; and the balance reported will be regarded by the chancellor as a fact established by the proof.

Independent of this view, we can not say from the whole record that the decree of the Court below is wrong, or that the merits of the case, so far as the appellant is concerned, have not been fairly determined in the Court below.

*Per Curiam.*—The decree is affirmed with costs.

*I. Blackford, D. Kilgore, H. P. Biddle,* and *B. W. Peters,* for the appellant.

*J. Brownlee,* for the appellee.