EDMISTON and another vs. GARRISON and others.

A verdict will not be set aside as unsupported by the evidence, where the evidence is conflicting or doubtful, or where it is not clear to the court that the jury were wrong.

Where the bill of exceptions does not contain all the evidence, the presumption must be in favor of the verdict.

The affidavit of jurors to their own misconduct cannot be received to impeach the verdict.

A new trial will not generally be granted on the ground of newly discovered evidence, where such evidence is merely *cumulative*.

A new trial will not be granted on the ground of newly discovered evidence, unless the applicant shows diligence in seeking to ascertain the evidence before the former trial.

APPEAL from the Circuit Court for *Wood* County.

Action by *Charles* and *Burton Edmister* against *Garrison*, *Jackson* and *Worthington*, partners under the name of *Orestes Garrison & Co.* The complaint was in substance as follows : In the winter of 1856–7, plaintiffs entered into an oral contract with defendants (who were the owners of a saw mill on the Wisconsin river in said county), by which the latter agreed to fit up their mill, and put it in good running order, ready for sawing by the first water in the spring of 1857, and to furnish

all necessary tools and implements for running the mill. Plaintiffs were to take possession of the mill when so ready for use, and manufacture lumber by sawing such logs as belonged to them, as well as such logs as defendants might have, and to pay for the use of the mill by manufacturing for defendants the same quantity of lumber as for themselves. Afterwards plaintiffs cut and hauled, and procured from other persons, logs sufficient to make 500,000 feet of lumber, to be sawed at said mill pursuant to the contract, and were ready and willing to take the mill at the first water in the spring of 1857, and proceed to manufacture lumber therein, and perform all their part of said contract. For the purpose of running the mill, they had hired and kept in their employ twelve men, at from twenty to thirty dollars each per month. On the 1st of April, 1857, while they had these men in their employ, sufficient water was running in the Wisconsin river, to drive the machinery and manufacture lumber; but defendants neglected to put the mill in running order for three months after that time, to the plaintiffs' damage $500.—Plaintiffs took possession of the mill under the contract, and, with the assent of defendants, sawed lumber therein according to the terms of the contract, after the mill was put in repair, and ran the mill to its utmost capacity, when there was sufficient water to run it, until further running was prevented by the freezing of the water; and during this time they sawed for defendants 110,000 feet of lumber more than the latter were entitled to for the use of the mill; and they demand judgment for such sawing at the rate of three dollars per thousand feet, which it was reasonably worth.—There was a third count for $135, for work done by the plaintiffs at the request of the defendants in the spring of 1857, in constructing a mill dam and repairing the mill. There was also a fourth count for $595, for cash paid, labor done, provisions furnished, and boarding of hired men of said defendants, at their request.—Answer, a general denial, and that the par-

ties had had an accounting, and defendants had settled and paid all plaintiffs' claims against them.

When the cause was called for trial, the defendants moved to strike out of the complaint the last count, on the ground that it had been added without their knowledge, and after the service of the summons and complaint upon them, and after they had served and filed their answer. The attorneys for the plaintiffs thereupon filed their affidavit, that said count was added by the consent of the defendants, by agreement made by the defendant *Garrison* with the affiants as plaintiffs' attorneys, about the time of the service of the complaint. Motion denied.

*Charles Edmister*, for the plaintiffs, testified : " Plaintiffs contracted with defendants to run their saw mill, by a verbal contract. Defendants were to put the mill in running order in the spring of 1857, when there should be sufficient water to saw. Defendants represented that the mill would cut one million feet during the sawing season, in time to run out the lumber the same season. Plaintiffs were to run the mill one year, and were to take possession as soon as it was put in running order in the spring ; and were to saw as much for defendants out of their logs as they did for themselves out of their own logs, for the use of the mill. I was ready to take possession as soon as there was sufficient water in the river, but the mill was not ready; this was the first of April ; but one saw was not ready until the fore part of May. I hired three men the 1st of April, and had three more that had worked for me during the winter. I kept these men on hand for the purpose of running the mill. I paid my men the average wages of $27 per month. I boarded them. It was worth $4 per week to board them. I had six men up to time first mill started ; self and men worked on the mill and at other business. I don't know how much work men did on first mill. I worked 5 days, Sherman 5 days, Layting 24 1-2 days, *Burton Edmister* 1 1-2 days, Whitaker worked $4 worth, Chapman $3 worth,

Green 4 1-2 days,—different men 9 days. I worked 13 1-4 days on mill; Wilson 3 1-2 days, Bennett 4 days, Horace Edmister 3 1-2, and *Burton Edmister* 3 1-2 days, and self 16 days. I boarded the men. My time was worth 20 shillings per day. The men's services, exclusive of board, was worth from one dollar to 9 shillings per day, and with board from 12 to 14 shillings per day. I was not idle. I cut 512,000 feet of lumber. Cut for defendants 306,773, and cut for self 205,336 feet. Sawed for defendants more than for plaintiffs, 101,239 feet. It cost $4.31 per thousand feet to manufacture lumber. It was worth $3 per thousand to manufacture lumber. It was a water mill. I helped defendants build a dam in July or August across the river. I think I spent two weeks at work on dam with six men. It was worth 14 shillings per day, including board. I did the work at the instance of *Garrison & Co.* I have paid out cash for defendants as follows: Cash to *Jackson* $31 or $36; $20 to *Garrison*; do. to *Garrison*, $10; do. to *Garrison*, $10. This was in the fall before we ran the mill. Paid cash to Fitch for *Garrison*, $17.25; paid cash to Chas. Douglass, $32. I also furnished to defendants one sack flour, $5.75; 1 bbl. pork, $32; 1 sled crook, $4; 35 weeks' board, $70. When I went in the spring, I took defendants' boarding-house; was to board defendants' men at $2 per week; I was to have the house free of charge. That was the arrangement. They did not furnish house as they agreed to. Afterwards we arranged the thing again, and I boarded their men. The contract for board was abrogated between the parties from July out. I also boarded defendants' men 18 days, which amounted to $5.14. I also have another bill against defendants for 1 sack flour, $2.25; 11 lbs. beef, 1.15; 1 sack flour, $2.25; 1 two-inch auger, $2; 1 ax lent, 1.50." Upon cross-examination, witness said: "The contract was made in 1856 and 1857. It was made in and about defendants' store; we had several conversations; most of the talk was with *Garrison* and *Jackson*. Plaintiffs took possession of the mill the

1st of April; one of the water wheels was then frozen. There was no water in the other floom; there was but little water in the slough then; the slough was frozen up. I went to cutting out ice; defendants did not agree to pay me for cutting ice. It took two or three days to loosen the first mill. The other mill was not ready to run; the crank was broken. My men were at work on that mill. They did not break the shaft; it was broken by men getting the crank loose. The mill with the broken shaft was got ready to run the 10th to 12th of August. We started the first mill the fore part of May; it was not ready to run before. We had six men besides ourselves in the fore part of April fitting up the mill and at other work; our men were at work not all the time at our work. In the summer we were short of water, and *Jackson* wanted to build a wing dam. I told them if they would furnish one man, I would furnish *Burton Edmister* and some men, as I must have water. We made a mutual agreement to repair the dam. Defendants' account against me was $424.25. When we came to settle, we called the accounts as on the bill. The money paid was for things we had of defendants. The $31 was, a part of it, borrowed by *Jackson*. Don't know what the ten dollars cash was for. The cash to Douglass was for labor on the dam; it was part paid in money. *Garrison* and I looked over the accounts in the fall of 1857, and left it until winter, and then looked it over again. *Jackson* and *Burton Edmister* were not called in to settle. We sawed 512,000 feet; I kept an account of it. It was scaled and estimated. We figured the lumber all up, and agreed upon the items and division at the time of the settlement. I received some goods of defendants; I received goods and did labor. There was no agreement between the parties by which the defendants were to offset their account against the plaintiffs against the amount of lumber due the plaintiffs."

The plaintiffs also read in evidence the deposition of *Burton Edmister*, which was, in substance, as follows: That, by con-

tract between plaintiffs and defendants, the former were to go into the mill of the latter and saw equal amounts for themselves and defendants; that plaintiffs went into the mill in March, 1857; that defendants were to repair the mill in March or the first part of April of that year; that the plaintiffs hired hands and run the saw mill night and day, and fulfilled the contract on their part; that defendants did not perform the contract on their part, but failed to fit up the mill at the time agreed upon; that one gate and one saw were not fitted up so as to run well until August; that the damage sustained by the plaintiffs from this cause was $500; that witness did not recollect of defendants' requesting plaintiffs to construct or labor upon the mill; that plaintiffs paid eighty dollars, if not more, to certain persons for laboring upon said mill and dam; that witness paid $30 in September, 1857, for work upon the dam, at the request of the defendants, and that they knew of plaintiffs paying the money; that plaintiffs furnished board for defendants' men that they (plaintiffs) had to work at defendants' request in the spring, summer and fall of 1857; that it amounted in all to about fifty-two weeks board and was worth $3 per week; that there was between sixty thousand and one hundred thousand feet of lumber sawed for defendants more than for plaintiffs, and the sawing was worth $3 per thousand; and that there had not been, to the witness's knowledge, any settlement between the plaintiffs and defendants.—Charles Douglas testified: "I was in the employ of the plaintiffs in 1857; worked at building dam above defendants' mill, fifteen and a quarter days, worth $3 per day. Was superintending the job. Plaintiffs paid me. Five to seven men worked with me." Timothy Hurley testified that labor at said mill was worth from $20 to $26 per month, and the price of manufacturing lumber was from $1 to $1.50. "When the sawyer furnished the mill, it was worth half the lumber to saw." Plaintiffs then rested.

For the defense, the plaintiff *Charles Edmister* testified that "forty-five thousand feet of the lumber received by plaintiffs

was sawed from defendants' logs, and the same amount was scaled to the defendants from the plaintiffs' logs." The defendant *Jackson* testified: "There was no particular agreement when the mills should be ready. The ice was cut out of mill No. 1, and the mill put in order before the first water. The shaft of mill No. 2 was broken, and afterwards the wrist was broken. The crank was broken by plaintiffs' foreman. Plaintiffs and one man worked repairing mill. The plaintiffs brought in their accounts to settle in the fall. I was called in with *Burton Edmister* to settle. The whole matter was talked over by the parties, and the only difference was in regard to the crank and boarding house, and those two items were modified to the satisfaction of all parties. The lumber account was looked over and settled. It was late in the season. We then divided the mills, plaintiffs taking one and defendants the other. Up to that time the lumber sawed and delivered to defendants was 292,777 feet; and the amount sawed from their logs 343,777 feet, the amount received by plaintiffs was 205,534 feet, and the amount sawed from their logs was 154,-534 feet. It was understood that the whole of the accounts were settled up, and *Garrison*, to close the matter up, was to scale a certain amount of logs to Horace Edmister in the spring. The whole matter was looked over, and *Burton Edmister* said it was all right. The balance was paid in logs to Horace Edmister in the spring. The money I had of *Edmister* was returned or settled for by me. The plaintiffs' account presented here as having accrued since the fall of 1857, is not a company matter of defendants. There was a small balance due the defendants on the settlement, after adjusting the crank matter and other matters upon which parties disagreed. Plaintiffs never called on us to permit them to saw any balance of lumber which they claimed." Upon cross-examination, witness said: "I looked over the bills at the settlement. I understood that the matters were so settled as to admit of a final closing of the matter by scaling the logs in the spring to Hor-

ace Edmister. *Burton Edmister* told me that the matters were all amicably adjusted. The account for the flour was not for the company of *O. Garrison & Co.*" One Dutton testified that the labor on the dam was nearly equally divided. The defendants then rested. To rebut the testimony of *Jackson* in regard to a settlement between the parties, *Charles Edmister* testified that the matter settled at the time spoken of by *Jackson*, was the division of a portion of the lumber, and to settle that and nothing else *Jackson* and *Burton Edmister* were called in; and that defendant *Garrison* said that whatever amount of lumber they had more than the plaintiffs, they would pay for.

Verdict for the plaintiffs for $568.39. Defendants moved to set aside the verdict and for a new trial, on the ground that the verdict was excessive and contrary to the law and evidence, and also on the ground of newly discovered evidence; and thereupon they filed an affidavit of the defendant *Jackson*, that at the time of the trial they were not aware that they could prove the settlement set up in defendants' answer by Wm. McLane, who was present at said settlement; that since the trial affiant had been informed by McLane that he was present, in the fall of 1857, at a settlement between the parties, at which all matters were finally settled and a balance struck between them. They also filed the affidavit of said McLane, that sometime in the fall of 1857 he was at the store of defendants, and saw *Garrison* and *Charles Edmister*; that while affiant was present, those two talked over and settled up all existing accounts and demands between plaintiffs and defendants, and struck a balance, the amount of which, or to which party it was due, affiant did not recollect; that affiant had never informed defendant that he was present at such settlement, or knew anything relating to this cause, until after the trial. Defendants also filed an affidavit of Patrick Hurley, the foreman of the jury in this action, which stated that the jury, in making up their verdict, allowed the

plaintiffs all the accounts presented by them, except the $31 paid to *Jackson*, and the $70 for board of hands; that affiant and several others of the jury were not perfectly satisfied that said verdict was just and correct at the time it was rendered, but were induced to render the same in order not to remain in session through the night. Motion for a new trial denied; and defendants appealed.

*Geo. B. Smith*, for appellants, contended that there was no proof to sustain the allegation in respect to damages from defendants' failure to perform their contract; yet it was apparent that the jury had rendered a verdict for damages claimed on that account, with interest, and ignored the other claims; and that the court erred in not striking out the fourth count; that the whole amounts claimed on the second and third counts being $465, and *Charles Edmister* having admitted that defendants had an account against plaintiff for $424.25, the jury could not have found upon the evidence that any such sum as they allowed the plaintiffs was due them on an accounting; and that the verdict was therefore so palpably against the evidence, that it ought to have been set aside. Gra. & Wat. on New Trials, 1206-7; *Derwort v. Loomer*, 21 Conn., 245. He also contended that the evidence showed a settlement of all claims between the parties before suit was brought; and that the court erred in not granting a new trial on the ground of newly discovered evidence.

*Gregory & Pinney*, for respondents, to the point that an application for a new trial on the ground of newly discovered evidence should show that the party has used *due diligence* prepare for trial, and also that the evidence is not *cumulative*, cited 1 Gra. & Wat., 463, 486: 10 Wend., 285; *Porter v. Talcott*, 1 Cow., 359; *Ewing v. Price*, 3 J. J. Marsh., 521; *Moore v. The Philadelphia Bank*, 4 Serg & R., 41; *Warren v. Hope*, 6 Greenl., 479. To the point that the affidavit of the juror Hurley was properly rejected, they cited 1 Gra. & Wat., 112; *Owen v. Warburton*, 1 New, 4; *Dana v. Tucker*, 4 Johns., 487

*Robbins v. Wendover*, 2 Tyler, 11; *Saville v. Lord Farnham*, 2 Man. & Ryl., 216.

*By the Court*, DIXON, C. J. We think the defendants' counsel mistaken when he says that the verdict is unsupported by evidence. The evidence is not very clear, it is true, but if the jury found for the plaintiffs all the items testified to by the plaintiff *Charles Edmister*, and then deducted the account of the defendants, for which no claim is made in the answer, still the verdict is supported. But the rule is, where the party seeks to set aside the verdict because it is unsupported by evidence, that the want of evidence must be clearly made out. Where the evidence is conflicting or doubtful, or where it is not clear to the court that the jury were wrong, the verdict will not be disturbed. Such is this case. We cannot say from the report of the evidence that the jury erred, or that any injustice has been done to the defendants. Besides, the bill of exceptions does not purport to contain all the evidence. The presumption is in favor of the correctness of the verdict until the contrary is shown.

The affidavits of jurors to their own misconduct cannot be received for the purpose of impeaching their verdict. 1 Gra. & Wat. on New Trials, 111, and cases cited.

A new trial on the ground of newly discovered evidence was properly ruled against the defendants. In the first place, the newly discovered evidence was merely cumulative, which is in general a sufficient reason for rejecting the application. But secondly, the defendants showed no diligence or effort whatever to procure the evidence. Applications of this nature are regarded with suspicion and disfavor. "The presumption is that, by proper effort, the party might have discovered the evidence and used it on the trial, and that his not having done so is owing either to intentional omission, or unpardonable neglect. To rebut this presumption, he must make out a case free from delinquency. His excuse must be so broad as to dissi-

pate all surmises to the contrary. He must show that he was on the alert, but that, notwithstanding, the evidence eluded him. Before he can expect aid from the court, he must satisfy it that he has tried to help himself. If the least fault be imputable to him, he will ask for relief in vain." 3 Gra. & Wat. on New Trials, 1026. If McLane, the newly discovered witness, was present at the time of the alleged settlement, it must be presumed that the defendant *Jackson* knew it, and that with proper diligence he could have found him, ascertained what he knew about the settlement, and produced him or his deposition in court at the trial. Yet *Jackson's* affidavit is totally silent upon this point. He does not say that he did not know that McLane was present, or that he had made any effort to find him. It does not appear where McLane resided. It is fair to infer, perhaps, from the affidavits, that he lived in the immediate neighborhood, and that *Jackson* knew him well. If this was so, then the defendants are still less excusable. If he resided at a distance, so that the defendants could not reasonably have seen him or ascertained what he knew about the settlement, or if he was personally unknown to the defendants, then those facts should have been stated. As it is, the defendants cannot escape the imputation of negligence in not having prepared for the trial ; and the motion, for this reason, was properly denied.

The motion to strike out the last count of the complaint was fully met by the affidavit of the plaintiff's attorneys.

Judgment affirmed.