## Case No. 17,331.

### In re WEBER FURNITURE CO.

[13 N. B. R. 559.] [1]

Circuit Court, E. D. Michigan.    1876.

BANKRUPTCY—COMPOSITION PROCEEDINGS—INDICIA OF FRAUD—REVIEW IN CIRCUIT COURT.

1. When, at a meeting of creditors. the debtor is examined in reference to the value of the assets mentioned in his statement. and the resolution of compromise is regularly passed. under section 17 of the act of June 22. 1874 [18 Stat. 178], although there is a great apparent discrepancy between the assets contained in the statement and the percentage accepted by the resolution. and other indicia of fraud exist. the district court should not refuse to record it, without giving the debtor and majority creditors full opportunity upon notice and hearing, as provided by the statute. to bring before it all the facts in view of which the latter accepted the compromise.

[Cited in Re Keller, Case No. 7,654.]

2. When one tribunal reviews the judgment of another. or the action of its own subordinate bodies or officers. it should never reverse without having before it all the facts and conditions upon which the decision to be reviewed was based.

3. The English and American cases upon the authority of the creditors reviewed. and a strong preference expressed for the rule deduced from them. which makes the decision of the majority conclusive as to the amount of the compromise, where their judgment is exercised in good faith. and there is nothing to indicate fraud, accident. or mistake.

[Cited in Re Jacobs, Case No. 7,159.]

This was a petition in review to reverse the judgment of the district court refusing to record a resolution of compromise. [See Case No. 17,330.] The record is voluminous, and in order to develop all the points discussed on the argument, the facts would be extensive. There was a wide discrepancy between the compromise offered, and the apparent value of the property. As the sole point decided is that it was error in the district court to reject the resolution without notice and hearing to the parties, the particular dates and facts presented in the record became immaterial. except as they are stated. in the opinion itself.

1 [Reprinted by permission.]

Don. M. Dickinson, for the debtor.

Moore, Canfield & Warner and D. C. Holbrook, for objecting creditors.

EMMONS, Circuit Judge. Several questions have been argued at the bar which will not be noticed in this judgment. The only one decided is whether the district court erred in refusing to record the resolution of compromise without notice and hearing of the parties concerned, thus bringing before it all the facts upon which the creditors themselves acted before passing judgment upon the papers presented. That power existed to review the resolution upon its merits, is not questioned. The statute in plain terms authorizes either the rejection of the resolution, when it is presented for record, or its rescission subsequently, if it is prematurely recorded. What we here decide is not that power has been exercised which does not exist, but that it has been exerted without proper proof. The resolution of creditors is adopted at the meeting at which not only the statement filed by the debtor is presented, but the debtor himself is examined at length, giving the creditors all the information which any, even the least of them, desire. This collateral evidence, in a great majority of cases, must be far more important than the statement itself in enabling creditors to judge of the value of the assets. This important feature of the proceeding, and which is that upon which the resolution in many instances must mainly depend, is not in the first instance brought before the court. The statement and resolution is alone presented. The statute provides no mode by which the testimony of the debtor shall be recorded, or, if recorded, can be brought before the district judge. It is a case coming within that very familiar and universal principle which forbids a court, in reviewing the judgment of another, to reverse for error of any kind, where, in the theory of the proceedings, the facts upon which the inferior tribunal has proceeded are not brought before it. The same principle is applicable where a court reviews the findings of its own subordinate officers. If the facts upon which such officer has passed judgment are not brought before the reviewing tribunal, we know of no exception to the rule that a judgment or finding pronounced is affirmed. The principle goes farther, and in instances where provision is made to carry up the facts for judgment, if in the course of the proceedings it appears that they are not all contained in the record, affirmation is the necessary result. Not because they are any more illustrative than numerous other similar judgments, but for the reason that they are accessible in previously prepared papers, we refer to a few cases, going upon the general principle which we think is disregarded when the court assumes the burdensome and impolitic duty of rejudging in all instances the judgment of the creditors, without having laid before it, as the statute provides, the facts, without which it is a presumption of law they would not have acted.

Walker v. Boston & M. R. R., 57 Mass. [3 Cush.] 1, was a proceeding to condemn lands for a railroad. The court had power to grant a new trial or reject the verdict. It was objected that the record did not affirmatively show that certain conditions, necessary by the statute to give validity to the verdict, had been complied with. At pages 2 and 3, the court say: "If the court of common pleas are called upon to set aside the verdict of a sheriff's jury, on the ground that the respondent had not due notice of the application, the objection cannot be sustained by showing that such notice does not appear by the warrant, the return or the record of the court, for it may, notwithstanding, be proved, by evidence aliunde, that the respondent was summoned, or that he consented to take notice without summons, or in fact appeared before the commissioners." Here the record shows affirmatively that there was an examination and proof in explanation of the statement. The only presumption which is asked is that it was sufficiently full to justify the vote of the creditors.

Flagg v. City of Worcester, 62 Mass. [8 Cush.] 69. Commissioners having issued their warrant, the jury assessed damages for taking lands, and on its return it was objected that it did not appear that any determination by the mayor and aldermen, as required by the statute, had been made so as to authorize the commissioners to issue a warrant for a jury. After saying that an objection could not avail because not seasonably urged, the court say: "Besides, it well may be taken for granted in ulterior proceedings, in cases of this kind, where the contrary is not shown by the record, that it was made to appear satisfactorily to the commissioners that such determination had been made by the mayor and aldermen. The maxim 'Omnia rite acta presumuntur' is applicable." Martin v. Stevens, 3 Ind. 519. The evidence was not returned. On error the court say: "If any state of proofs might have sustained the charge, it will be presumed right." Cullen v. Lowery, 2 Har. (Del.) 459. The court say: "The record shows it is for a school tax. There is one case, and only one, in which the justice had such jurisdiction, and perhaps we ought to presume it was such a case rather than the contrary." There was no affirmative proof that it was such a case. And see applying in various forms of proceeding the same general principle of presumption in favor of the rectitude of proceedings which are being reviewed on error: McKinney v. Pierce, 5 Ind. 422; Elder v. Robins, 2 Ind. 210; Montgomery v. Doe, 4 Ind. 266; Wagers v. Dickey, 17 Ohio, 439; Hicks v. Person, 19 Ohio, 426; Bankhead v. Hubbard, 14 Ark. 300; Richardson v. Denison, 1 Aik. 210; Stearns v. Warner, 2 Aik.

20; Kingsley v. Bank. 3 Yerg. 107. In the last case it is said: "The judgment should clearly have been for the defendant, if all the testimony was that certified in the record; but, as it does not appear there was no more, it will be presumed there was more." It may have been quite clear on the face of the statement in this instance, that the assets would have paid more than twenty cents, but, as is said in the case just cited and its numerous fellow-judgments, the presumption is the omitted testimony was sufficient to explain and overcome it. Coil v. Willis, 18 Ohio. 28, is a case quite applicable in its reasoning to the case before us. Clements v. Benjamin, 12 Johns. 299. on certiorari. The facts before the court by no means warranted the judgment, but it was held the burden was on the plaintiff in error of showing affirmatively, by procuring a proper return, that there was no additional explanatory proof. We think in this case the burden was upon the objecting creditors to show the insufficiency of the evidence collateral to the statement given by the debtor. Holly v. Rathbone, 8 Johns. 148; Wilson v. Fenner, 3 Johns. 439; Kline v. Husted, 3 Caines. 275. Similar adjudications in New York are very numerous. See, also, Wight v. Warner, 1 Doug. [Mich.] 384; Fleming v. Potter, 14 Ind. 486; Sharp v. Johnson, 22 Ark. 79; Long v. Rodgers, 19 Ala. 321; Newberg v. Henson, 12 Cal. 280; Stockton v. Burlington, 4 G. Greene (Iowa) 84; Bailey v. Clark, 6 Fla. 516; Pratt v. Miller, 2 Kan. 192; Stewart v. Wilson, 5 Dana (Ky.) 50; Byrne v. Riddell, 2 La. Ann. 11; Gray v. Howard, 12 Mich. 171; Barnsback v. Reiner, 8 Minn. 59 [Gil. 37]; Anderson v. Williams, 24 Miss. 684; Raymond v. Edgar, 19 Mo. 32; Weed v. New York R. Co., 29 N. Y. 616; Brindle v. Brindle, 50 Pa. St. 387; Martin v. Bank, 2 Coldw. 332; Ward v. Townsend, 2 Tex. 581; Edmiston v. Garrison, 18 Wis. 594; Lamb v. Grover, 47 Barb. 317; Hays v. Hays' Admr. 26 Mo. 123; People v. Wayne Circuit Judge, 18 Mich. 483.

This is not the larger portion of judgments we have examined on this subject on a former occasion; reference to them all would serve no useful purpose. There is no department of the law where judgments are more numerous and pointed to a principle, or where they have applied one in more' diverse circumstances or more universally. They authorize us to apply it in the case before us, and say that where no fraud appears, the duty is cast upon the objecting creditor to show affirmatively that the resolution of the creditors is unwarranted, and that the court should record it, unless upon notice and hearing it inquires into the testimony, which shows it ought to be rejected.

We should not understand from the judgment of the learned judge of the district court that he would at all disagree with these generalities. We should infer that the only difference between his judgment and our own consists in a mere matter of practice. Shall the burden of bringing this additional testimony before the district court be assumed by the creditors, whose resolution is to be recorded, or shall the presumption exist that that resolution is right until attacked by those who are interested in showing it to be erroneous? We think a more convenient practice is to extend to those interested the presumption of rightfulness which attends all other judicial and statutory action. We think it would be, in the last degree. inconvenient, if, whenever an apparent discrepancy between the assets and the compromise appears, the court is to be burdened with the duty of re-hearing the testimony and acting as the guardian of those interests which the creditors themselves, in the very nature of the case, are so much more capable of. protecting. We cannot assume any such duty upon petitions of review, and think it will lead to ill consequences, if adopted as a practice in the district court.

We have been favored by full citations of English and American judgments upon this statute. In selecting a portion of these which have been cited and commented upon, in justification of our judgment, we do but little more than reproduce their analysis and consideration from the very able brief of the counsel for the debtor. This efficient aid is sufficiently rare in its occurrence to make our acknowledgment for its presence here not unworthy of mention.

We think the following adjudications upon the English act, precisely like our own, so far as this subject is concerned, differing from it only in the mere practice by which the subject is reached, show that the British courts have uniformly held that in all questions of mere amount, and all conditions, and terms which affect the simple question of policy on the part of the creditors, up to the point where fraud or ill-faith is reached, it is left entirely to the discretion of those who are alone interested in the result. Without being called upon to affirm that this will be accepted as law under our own statute, we think the adjudications there and in this country already pronounced upon the same subject, are coercive to at least this extent—that when a resolution has been regularly passed, and there is nothing before the court but it and the statement of the debtor under the act, it will. prima facie, be held to be good, and that unless there is some feature in it so gross as to excite the suspicion of fraud. it will be affirmed.

Ex parte Radcliffe Inv. Co.. L. R. 17 Eq. 121, decided in 1873 on appeal to the bankruptcy court. Bacon. C. J.. in construing that clause of the statute which provides for adding to or varying the original resolution of compromise. and holding that the persons who are not to be affected by the amendatory resolution are not creditors, dis-

cusses with much fullness the powers conferred upon creditors, under the English statute, and says: "Now, the existing statute has made this striking and marked difference in the law of bankruptcy—that all, or nearly all, the powers and authority which were given to the court under the former statutes are now transferred to the creditors. They are made the administrators and judges of their own affairs, and they are, under the terms of the statute, bound by the votes of a certain majority at a meeting duly convened. One of the things contemplated by the existing statute is to regard only the interests of creditors, and it is in their interest alone that it provides that it shall be in their power to prefer the acceptance of the composition to the issuing of proceedings in bankruptcy against their debtor, or to resorting to any other legal remedy they may possess." His whole judgment rests largely upon the assumption that the absolute power of binding the minority is conferred upon the majority of creditors. The primary authority is vested in them.

Ex parte Duignan, L. R. 11 Eq. 604, in 1871. The deputy judge had ordered a levying creditor to deliver property to the trustee in liquidation, holding that the same principle applied in such case as in that of an ordinary adjudication in bankruptcy. Affirming this ruling, on appeal, Bacon, C. J., again minutely reviewing these statutory provisions, says: "They hand over to the creditors of insolvents generally an absolute power of determining the manner in which, and the terms upon which the assets of the debtor who is found to be bankrupt, whether in consequence of a hostile proceeding originated by his creditors, or by his own confession, shall be administered and distributed." It is this unlimited power conferred by the statutes which furnishes the keynote for their construction.

Latham v. Lafone, L. R. 2 Exch. 115, has been cited at the bar, and is relied upon in the opinion of the learned judge of the district court to show, what is not doubted, that power is given by this law to reject or set aside the resolution of compromise. A motion was made to discharge a debtor from arrest because a deed of composition had been ·signed and registered. The motion was denied. Two judges held the deed unreasonable upon grounds having nothing to do with the mere quantum of money to be paid. The circumstances were so gross as to incline an equal number to base their judgment upon the far better ground that it was not a deed under the statute at all. The judgment has no tendency to show that the court, without collateral facts, will review the decision of creditors as to the percentage they shall receive. This criticism is fully supported by the following language in one of the opinions: "The main object of this section was to enable the creditors to manage their own affairs. It was clearly intended to confer large discretionary powers on the creditors, and we ought to give every effect to that intention. I agree that if the deed is unreasonable to the extent of absurdity we ought not to sanction it, but prudence is so much a relative matter that it becomes very difficult to say conclusively that a deed is unreasonable on this score, where the creditors have said it is reasonable, and, except in cases of inequality, we have no certain test to go by."

In re Cowen, 2 Ch. App. 563, was relied upon for the same purpose as the preceding. Leave was given below to issue execution, notwithstanding a composition by the debtor, under the act of 1861. Lords Turner and Cairns both rest their judgments upon the ground that the deed was not executed in good faith. There was an expectation of benefit peculiar to the consenting majority, which is expressly pronounced a fraud upon the rights of the others. Among other evidences of ill-faith the circumstances of haste in which the deed was executed, and that there was no examination of the debtor, no evidence of the value of the assets, are referred to. What gives this judgment much weight in favor of the positions taken by the promoters of this bill of review is what is said upon the other point, and which is alone applicable here. Proof having been made in that case that the assets would pay ten, instead of two, shillings in the pound, and this fact being relied upon at the bar to show that the compromise was unreasonable, within the reason of decisions which had held that unreasonable clauses invalidated a deed, Lord Cairns, at page 569, says: "It was much pressed in argument that wherever the court finds the deed to be unreasonable in its provisions it will be treated as invalid, and that it is unreasonable if the amount of composition be not in fair proportion to what the debtor is able to pay. But in my opinion there is a statutory power given to a majority of the creditors to bind the minority. They are made the judges of the propriety of the arrangement so long as they exercise their power bona fide; and it certainly seems to me that it would be contrary to the spirit of the act that this court could sit in review on their decision as regards the quantum of composition they may agree to accept. But this is subject to the paramount obligation that this power, like all other powers, must be exercised fairly, so that there may be a bona fide bargain between the creditors and the debtor. If it should be found that the bargain was tainted with fraud, the arrangement will not be binding on the non-assenting creditors. If, for example, it were found that there was a bargain with some of the creditors to give them some peculiar benefit, that would be a fraud. But even without any ingredient of fraud, if the creditors, from motives

of charity and benevolence, which might be highly honorable to them, were willing to give the debtor a discharge on payment of a composition wholly disproportioned to his assets, that would not be such a bargain as the act requires, and would not bind the non-assenting minority." Lord Turner is equally explicit. It is evident that the last sentence quoted from Lord Cairns, which concedes a deed would be illegal when the majority acted from motives of benevolence, without moral corruption, in no way qualifies the previous doctrine that the mere quantum of payment is solely for the creditors.* What is meant is, that where their judgment in good faith is pronounced upon the financial ability of the debtor, the power of the majority is paramount; but where it appears affirmatively that the majority is made up of relatives, warm personal friends of the debtor, or those who have high personal interests in his future prosperity, insomuch as to constitute evidence that they have not performed their duty under the act in deciding what the debtor can pay, but are disqualified from the performance of such duty by their personal relations, their prejudices, or their frauds, then their action will be reviewed. The law in all cases, irrespective of motive, deems such action a fraud.

Ex parte Linsley, 9 Ch. App. 290, reviewing the successive decisions of the deputy judge and chief judge in bankruptcy, on an application to set aside an order discharging a debtor under a composition, held, that where it quite clearly appeared upon the face of the schedules, by the valuation of the debtor himself and by the sworn testimony of expert valuers, that there was a surplus beyond paying all his debts and the composition was for fifty cents, that as no fraud appeared and the creditors were not deceived, the objection of the opposing creditors should be overruled, and a compromise resolution affirmed. This judgment would have been well cited by the majority creditors to sustain the resolution in this case had there been a hearing upon notice and evidence in the court below. It is, indeed, a strong one to show the absolute power accorded to the creditors under the British statute, from which ours was taken, where it is exercised in good faith. It is referred to here only to suggest that it and its kindred fellow-judgments under the British statute establish a principle which, if followed here, will at least prevent the rejection of a resolution where nothing whatever appears beyond the written statement and the resolution itself. Ex parte Nicholson, 5 Ch. App. 332. The deed provided for the acceptance of the obligation of a third person in discharge of debts, instead of relying on the property of the bankrupt. The British statute does not, like our own, provide that the payment shall be in money. The court, in deciding the deed not unreasonable arguendo, repeats the doctrine that the statute confers with much fullness the power of deciding this whole question upon the majority

of creditors, and that their decision will not be interfered with so long as bad faith does not appear.

In re Richmond Hill Hotel Co., L. R. 4 Eq. 566. The deed postponed the payment for two years. Motion to restrain the action of a creditor, objection being made that such a deed was unreasonable, the court approving. Stone v. Jellicoe, 3 Hurl. & C. 263, which held a deed good when the payment was only forty pounds a year, added, "Can I say the delay of payment for two years makes the deed unreasonable? The creditors must judge of that."

Ex parte Roots, 2 Ch. App. 559, was an application for leave to issue execution. The commissioner granted it upon the ground that one deed having failed for non-performance by the debtor, it being succeeded by another of the same amount, and evidence being presented that the assets would pay a much larger sum, the deed was fraudulent. In the court of chancery, on appeal, Lord Cairns said: "None of the cases cited warrant the court in holding the deed unreasonable merely for the amount of the composition." The case was sent back for a further investigation as to whether it was fraudulent in fact, the court strongly disapproving the ground of the judgment below, which rested upon certain indicia or prima facie presumptions of fraud upon the face of the papers. The doctrine of the judgment is quite full to the principle that the question of amount, the terms of the deed, so as they are within the law, are wholly for the majority, and that the onus of proving ill faith is upon those who charge it, and being charged, that plenary proof will be demanded to sustain it. A suspicious succession of deeds, a wide discrepancy between the assets and the amount to be paid, both existed. The reviewing court conceded they were manifest indicia of fraud; but that they were by no means sufficient without proof aliunde to show actual ill faith.

In re Reiman [Case No. 11,675], was an application to record a resolution brought before the circuit court on a petition of review. It was objected that the payments were by promissory notes and not in money, and that an item of assets had been omitted from the statement. Justice Hunt several times in the course of his judgment refers to the principle involved in the following quotation: "He (the debtor) presents a list of the names and amounts of his creditors and of his assets. His creditors consider the subject thus presented, and are authorized to examine the debtor under oath to obtain better or more precise information. The whole matter being thus before them they resolve that their interests require that a compromise shall be made, and that, if the debtor will pay them a certain percentage on their debts, they will accept it in satisfaction, and he shall be discharged. They deliberately resolve, upon an understanding of all the facts, that this is all that his property can be made to pay. Are they not as capable as a court of law of judging on that

subject? Some one must decide the question of the amount of the dividend, and of the discharge. Some one must say that the debt of an opposing creditor shall be discharged without payment in full: and the fact that the body of creditors determine the point is no more oppressive to the opposing creditor than if the determination had been made by the court." The precise point was not before Justice Hunt, nor does he refer to the English judgments, but his comments are strikingly like those of the best considered English adjudications upon the subject before us.

In re Haskell [Case No. 6,192]. It was objected before Judge Lowell, in opposing the confirmation of a resolution, that the statement made by the debtor was insufficient. In deciding that a statement made by the bankrupt of his assets might be used for that purpose, he says: "It is true that such a schedule cannot inform creditors of such particulars as will enable them to decide understandingly upon an offer of composition. But what written statement will do this? The law requires the debtor to be present and to answer all inquiries, and the creditors are not bound to act until all such inquiries have been answered, including those by a majority, or by a single creditor, and including a due inspection and explanation of the books."

Ex parte Jewett [Case No. 7,303] was an application before the same judge to confirm a resolution of compromise. It was objected that a creditor was not permitted to examine the debtor and also that the sum to be paid was insufficient. A new meeting was authorized on account of the former error, but speaking of the other objection, that the quantum of payment was insufficient, the learned judge says: "Congress has inserted in the statute a clause not found in the English act, putting upon the court the duty of ascertaining whether the composition will be beneficial to the parties concerned. After the very full discussion at the bar, and nearly two days spent in inquiring into the debtor's assets. every one connected with the case conceded, I believe, that a burden has been cast upon the court that is not easily sustained. of instructing parties concerning their own interests. In the absence of fraud and concealment, the question for the court seems to be, not whether the debtor might have offered more, but whether his estate would pay more in bankruptcy. There can be no other standards, because the court cannot require the debtor to make a second offer; and perhaps ought not to permit him to do so under any circumstances. And as it is established by all experience that a man can make more out of his own assets than assignees of more general capacity than he, and entirely honest, can possibly realize, there is an undoubted margin in many cases which the debtor may save by offering less than he might offer, but more than his creditors can obtain by process of law. The English statute makes the determination of the creditors final on that point, in the absence of fraud, and I dare say

it will be found that the practical administration of our law must be very similar." It is said the practical administration of the American law should be like the English, from which it is taken. It would seem from this quotation that the British acts by express enactment made the decision of the majority conclusive. They do not do so. It is only by sound judicial construction and the unfitness of attempting to rejudge the judgment of creditors when they have all the facts before them, and where there is no fraud, that the courts refuse to interfere upon the mere question of quantum. All which the learned judge means is this, that under the British practice the resolution is entitled to be recorded by the registrar if it is regularly passed. He has no discretion or power to inquire into the merits. If the resolution is to be reviewed it must be done by motion to set it aside, when, under the English practice, precisely the same inquiries are made as are proper under our statute when a motion is made to record the resolution in the district court. The powers of the creditors are alike in each. So are those of the court. The only difference is that in England it requires a special motion to set aside. while here the question may be raised in opposition to the motion to record.

In view of this statutory and judicial history, English and American, the manifest inconvenience of a contrary practice, and which is well illustrated in the case of Jewett, where two days were consumed by a district court in dealing with the mere financial question, what we suggest as the true rule is, that when nothing appears to the district court beyond what would have appeared. to the English registrar —the naked statement and resolution—as a nearly universal rule the resolution will be recorded. That if the decision is to be reviewed it must be done by notice and hearing, when the principles applicable to the judgment should be such as we have sought to deduce from the English judgments on motions to set aside. They have our hearty approval as being consonant with the manifest intention of the statute, and the impossibility of tribunals organized like the district and circuit courts supervising with anything like intelligence the honest and regularly exercised judgment of the creditors. We have said that where no evidence aliunde the statement and resolution is presented, the resolution as a nearly universal rule should be recorded. The only exception we would recognize is where it manifestly appears there was some fraud, accident, or mistake—such a contingency as would incline the court in any other case of ordinary practice ex mero motu to refuse to proceed, and upon notice to all parties concerned, require the exceptional and suspicious circumstances to be explained. That such circumstances did not appear in this case it is not necessary for us to affirm. We think it is sufficient to justify our judgment in authorizing the resolution to be recorded, that even if this did appear, inquiry was not made, but the proceedings adjudged fraudulent upon

the mere face of the papers. Upon precedent and principle alike we think this was erroneous. The judgment of the same court in Re Whipple [Case No. 17,513], is in no wise in conflict with our decision. It did, it is true, upon a mere question of how much, refuse to record a resolution of compromise. It was, however, upon full hearing. All the facts were before the court. Whether the American courts ought to assume this duty of supervision to an extent much larger than that exercised in England is not before us for decision. We prefer the rule as there announced, but shall cheerfully acquiesce for the sake of conformity in what shall be the general judgment of co-ordinate tribunals.

There are some other features in the case which might with propriety be discussed, but we prefer resting our judgment solely upon the error that there was no hearing and evidence outside of the resolution and statement. Bissell v. Jones, L. R. 4 Q. B. 49, is cited by the petitioners in review in support of that feature of the present composition which transfers in certain contingencies the property to Stroh. No objection has been made to it by counsel in this court. We see none ourselves, but have not much considered it. And see Wells v. Hacon, 5 Best & S. 196, and Ex parte Nicholson, 5 Ch. App. 332.

The fact that a large majority of the creditors assented to the resolution has been earnestly urged by the petitioners in review. We do not deem it material whether great or small. It is only a circumstance which might with others be taken into consideration in a doubtful case, where fraud or gross inadequacy appeared. The fact that many creditors appeared by attorney, referred to in the opinion of the learned district judge, we do not deem of consequence here. It, too, is but another fact in the mass of evidence which would be necessary to invalidate the resolution. It is explained that the attorneys who signed for the creditors were attorneys in fact, especially authorized in most instances to sign for a precise sum named in the compromise. In such circumstances, where the attorney has but a ministerial duty to perform, there is no incompatibility in the same person appearing as attorney for the debtor upon the record and also as the attorney in fact, authorized to compromise as a special ministerial duty—that of signing the deed of compromise for the sum named in the power of attorney itself.

These matters are referred to here only as illustrative of what we deem at least the better and safer principle, that of rejudging the judgment of the creditors only upon the fullest hearing and consideration of all the testimony. They may all be more or less important when that testimony is fully before the court.