Smith et al. v. Valentine.

Ellen A. Smith, *et al.*

*vs.*

## D. H. Valentine.

Where the papers in an action brought to foreclose a mortgage have been lost, it is no objection to the competency of the clerk of the court in which the action was brought to testify to the making and signing by the judge of a decree of sale of the mortgaged premises, that the judge himself might have been called.

Such decree is a final decree and by *Rev. Stat.*, ch. 94, s. 31, 32, was from the time of its signing a record of the court as fully as if enrolled, and is, in itself, and not any copy thereof entered by the clerk in any book, [whether such entry were required by any rule of court or not,] the highest evidence.

The supreme court had in 1856, no authority by law to make rules binding upon the district court. The register of actions, kept by the clerk as then required by law, contained entries to the effect, that a writ of subpœna issued Nov. 8, 1851, returnable Dec. 30, 1851, and was returned *non est inventus* Dec. 1;—that an *alias* subpœna issued Dec. 1, returnable Dec. 15, and returned Dec. 17, 1851, endorsed by the sheriff under date of Dec. 15, "that defendant is not to be found in my county, nor in the territory;" and that on Dec. 22, an order was made for publication of a rule to plead. *Held,* that under the laws then in force, such proceedings do not appear to have been unauthorized by law, and void, and that, therefore, such entries do not affect the presumption arising from the fact that a decree was made and signed, that the court had acquired jurisdiction over the parties.

An omission to enter the rule to plead and order of publication in a book kept for the purpose, pursuant to a rule of court, is, at most, but an irregularity not to be collaterally taken advantage of. It was not

Smith et al. v. Valentine.

necessary under *Rev. Stat.*, *ch.* 94, *s.* 14, that the order before publication should be authenticated by the signature of the clerk.

The provision (*sec.* 58) that the judge shall not by such decree order any lands to be sold within nine months after the filing of the bill of foreclosure, means that the sale shall not be fixed for an earlier date.

The object of *sec.* 30, was to fix a date within which, and to prescribe the means by which, an absent defendant might entitle himself to a rehearing or review after the decree had been made, and even after it had been enforced.

The confirmation mentioned is the confirmation of the decree, and not a decretal order confirming a sale had in pursuance of the decree. On giving security as prescribed in said section the decree could be enforced by sale, or otherwise, and the title of the purchaser at such sale would not be affected if the decree should afterwards be reversed, upon the defendant being allowed to come in and defend.

The evidence tended to show that the decree required the sale to be previously advertised, but this was not required by law, and a sale without it would not be invalid.

If such publication had been essential to the validity of the sale, the decree of confirmation would have been conclusive proof that the requirements of the decree of sale had been complied with. Not being requisite to the validity of the sale, evidence that in point of fact no such publication had been had would have no tendency to prove that the sale was not confirmed.

This was an action of ejectment commenced in the court of common pleas for Ramsey county. It was admitted that on the 25th day of February, 1851, one Charles K. Smith, since deceased, was the owner of the premises in dispute. The plaintiffs claim as his widow, and heirs-at-law, the defendant, through intermediate conveyances, from the purchaser at a foreclosure sale under a mortgage executed by said Charles K. Smith to one Vetal Guerin. The important issue in the case was as to the validity of this foreclosure. The cause was tried before a jury who found for the defendant. The plaintiffs moved for a new trial, and appeal to this court from an order denying such motion. In regard to the alleged errors of

the court below, excepted to by plaintiffs and upon which they base their claim for a new trial, the case is sufficiently stated in the opinion.

HARVEY OFFICER and E. C. PALMER, for Appellants.

GILFILLAN & WILLIAMS, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The question in this case was as to whether the mortgage from Smith to Guerin has been foreclosed or not.

The papers, whatever they were, in the suit brought for that purpose by Guerin against Smith, have been lost.

But the defendant at the trial introduced evidence tending and sufficient (if competent) to establish the fact that a decree of sale of the mortgaged premises was made, and signed by the judge; that the property was sold, and a report of sale made by the person appointed to sell, and that a final decree of confirmation of said sale was made and signed by the judge.

The testimony of the then clerk of the district court and his deputy is full and clear as to these matters, and it is not attempted to be contradicted.

But as to the decree, the plaintiffs object that their evidence was not competent, because it being shown that the judge who was sworn to have signed said decree was living, " his was the best secondary evidence on the subject, and should have been produced." Parol evidence on the subject, however, whether of the judge or the clerk, was all of the same kind. That of the clerk did not differ in degree from that of the judge. That a certain decree was once in existence, being the fact to be shown, it might be that the man whose duty it was to sign it would be more likely to recollect the facts than the man whose duty it was to file it, and it might

be otherwise; but such considerations have nothing to do with the quality of the evidence. The witnesses in either case testify only from their recollection, and there is no legal presumption that the recollection of the one is better than that of the other. It is said, however, that the clerk kept at the time certain books of record of proceedings in chancery, as required by the rule of the supreme court adopted in 1850, and that according to said rule of court it would have been his duty to have entered therein the proceedings of the court; that such records are, therefore, the best evidence, and the original decree would be only secondary evidence in case of the destruction of the record; that the books being produced at the trial, and containing no entry of any decree of sale, it is conclusive that it never existed.

There might be some force in this, if it were true that a decree of sale would not be of force or effect; would be no decree, that is, until entered by the clerk in some one of the books mentioned. But the statute is conclusive to the contrary, for the *Revised Statutes, ch.* 94, *s.* 31, provided that a final decree of the court of chancery shall have the same operation, force and effect, from the time of signing the same, as a judgment at law.

A decree for the sale of the mortgaged premises would be a final decree. *Whiting vs. Bk. of U. S.,* 13 *Peters,* 6; *Bronson v. R. R. Co.* 2 *Black,* 524; *Thompson v. Bickford, Ante.* 17.

A judgment in a civil action must have been entered by the clerk in the judgment book. *Rev St., ch.* 71, *s.* 72, 73; *Williams vs. McGrade,* 13 *Minn.* 46.

But the statute puts the decree, when signed, on a par with such judgment. It is a record of the court, as if it had been entered, (*ch.* 94, *sec.* 32,) and is in itself, and not any copy thereof, entered by the clerk in any book whatsoever, the

highest evidence, and there is no provision in the statute requiring the entry of such decree.

If the rules to which we have been referred, therefore, are to be construed as requiring the entry of such decree in any of the books referred to, they would under any circumstances be ineffectual to change the character of the decree as evidence. But as to these rules, we may as well say here that an examination of the laws in force, when they were made, discloses no authority whatever in the supreme court to make rules to bind the district court. On the contrary, the district court then had exclusive power in the premises. *Laws of* 1849, *ch.* 20, *sub ch.* 2, *secs.* 3, 46, 47.

The supreme court acquired no power to make rules to bind the district court until the passage of the revised statutes in Sept., 1851, and it did not exercise the power till July term, 1852. *Rev. Stat., p.* 466 ; *vol.* 1, *Minn. Rep. Appendix.*

The law in force at the time, required the clerk of the district court to keep minutes of the proceedings of the court in term. He was also required to keep the register of actions provided for on page 421 of the *Rev. Stat., sec.* 40, which contemplates no entry at length therein of decrees. It was his duty, however, to perform not only all duties which might be assigned him by law, but by the rules of the court of which he was clerk, made in pursuance of the statute in such case provided. *Rev. Stat., ch.* 8, *art.* 11, *sec.* 5.

But this would not oblige him to keep books pursuant to rules of the supreme court not effectual to bind the district court. We are to take it then as established in the present case, that a decree of sale was made and signed in this foreclosure suit, and that the report of sale made thereunder was confirmed. The presumption is that it was regular in form, and not only so, but that the court had acquired jurisdiction. (*Gemmell vs. Rice,* 13 *Minn.* 400.) If it had, its decree was

conclusive upon the rights and liabilities of the parties to it and those claiming under them, until reversed by the appellate court, or impeached by an original bill for fraud in obtaining it, or attacked for palpable error by bill of review. 2 *Daniel Ch. Pr.*, *p.* 1000, *n.* 1.

The decree has the same force and effect as a judgment. It cannot be attacked collaterally for any irregularity in the proceedings. *Kipp vs. Fullerton*, 4 *Minn.* 480 ; *Hotchkiss vs. Cutting*, 14 *Minn.* 537.

The plaintiffs refer to the register of actions kept by the clerk of the district court at the time, as showing that the court did not in fact acquire jurisdiction. They rely on the statement therein, " Writ of subpœna, issued Nov. 8, 1851, returnable on the 30th day of December, 1851," and contend, 1st. That this is evidence that said subpœna was in fact made returnable on that date. 2d. That inasmuch as the register states that said subpœna was returned, *non est inventus* Dec. 1, 1851 ; that an alias subpœna issued Dec. 1, returnable Dec. 15, and returned Dec. 17, endorsed by the sheriff under date of the 15th, that the defendant " is not to be found in my county, nor the territory," that, therefore, such return and issuance of said alias, and the order for publication of rule to plead made, as appears by said register on the 22d December, are unauthorized by law, and void. Conceding the first proposition, the second by no means follows.

Plaintiffs rely on the case of *Fladeland vs. Delaplaine*, 19 *Wis.* 459. That case decides that under a statute providing that the court might, by order, direct a non-resident defendant to appear, plead, &c., at a certain day therein to be named, not less than three nor more than six months from the date of such order, an order which required such a defendant to appear, &c., within less than three months, conferred no jurisdiction. But we are unable to see how that case has any

bearing here. The statute provided that all process should "be made returnable on a day certain, therein to be mentioned," and that it should be the duty of the officer to whom any process should be directed or delivered, to serve and execute the same, and to make return thereof at the time and place therein mentioned. *ch.* 94, *s.* 11, *p.* 463.

Upon the return of a subpœna duly served, as required in *sec.* 12, an order might be entered, against a resident of the county, to plead in thirty days, against a non-resident in ninety days. *Sec.* 13.

The next section provides that "In case of a bill filed against any defendant against whom a subpœna, or process to appear shall issue, and such defendant shall not cause his appearance to be entered in such suit, as, according to the rules of such court, the same ought to be entered in case such process had been duly served, and it shall be made to appear by affidavit or otherwise, to the satisfaction of the judge, that such defendant is out of the territory, or cannot upon inquiry be found therein, * * * such defendant shall be deemed and taken to be an absent defendant ; and thereupon the judge may by order direct such absent defendant to appear, plead, answer, or demur, to the complainant's bill," &c., which order may be published as provided in said section.

It seems to us, that to bring this case within the authority above referred to, it would be necessary to construe this statute as if it had read : "In case of a bill filed against any defendant against whom a subpœna or process to appear shall issue, and such defendant shall not cause his appearance to be entered in said suit, on the return day of such process," or on any other day thereafter, which may be supposed. It might then be contended, perhaps with some show of reason, that the defendant could in no event be deemed an absent defendant till after such return day.

Smith et al. v. Valentine.

But the insuperable obstacle to such a construction is, that no rule of the district court, nor any rule of the supreme court binding on the district court, is shown to have been then in existence fixing any time within which a defendant, upon whom such process had been duly served, was to enter his appearance.

It follows, that in a case where, as here, process had not been served on the defendant, it cannot be considered as indispensable to such defendant's being deemed an absent defendant, that the return day named in the process should have elapsed without his appearing.

If, therefore, it were admitted that the returning by the sheriff of the first subpœna before the return day named therein, was irregular, it would not follow that the order to plead was void. But the plaintiffs do not show that such a return would be irregular. The statute requires that the sheriff shall serve and execute the process, and make return thereof at the time and place therein mentioned. It is a process which has been *served* which is here in terms required *so* to be returned, and for the reason, that it is *then* that plaintiff may take his rule to plead. *Sec.* 13.

But if the sheriff to whom the writ is directed should find, for instance, that the defendant is not a resident of his county, but resides in the next county, there is nothing in the law which in terms forbade his at once returning the writ which he could not serve, and the issuance of another directed to the sheriff of the county in which service might be had; and the reason of the thing would seem to require that no such prohibition should be implied. So if the defendant did not reside in the county, and the officer had no knowledge as to where he did reside, why should he not at once have returned a writ he could not execute ? If the law did not forbid it, no reason can be given why he might not do so. No good reason

can be given why, in such a case, the plaintiff might not take out another subpœna, returnable on any day allowed by law, and deliver it to the same officer, any more than a good reason can be given why he might not in the case of a defendant resident in another county, take out a new subpœna and deliver it to the sheriff of such other county, and make it returnable on any day allowed by law, though prior to the return day in the first writ.

He might have reason to suppose, for instance, that the defendant would come into such first county in season to be served before the return day, or, if not, there is no rule of equity practice, in the absence of any statute provision to that effect, which would entitle the absent defendant to any particular lapse of time before proceedings could be instituted to get service on him according to law. We are, therefore, of opinion that the presumption that the court acquired jurisdiction is unaffected by the statement aforesaid, in the said register of actions contained. The plaintiffs' suggestion, that the rule to plead and order of publication thereon could have no force or effect till entered in the proper order book, is perhaps sufficiently answered by what has been already said on the subject of these several books referred to, but it may be added that on general principles of chancery practice, a court of chancery is not bound upon the party's application to inscribe in an order book an order which it may pass in a case before it, ( 12 *Peters,* 339, *p.* 343,) and it cannot therefore be any objection to the validity of such order, or any other order, that it is not entered by the clerk in any particular book, though kept for the purpose, pursuant to a rule of court. Such omission would be only an irregularity not to be taken advantage of collaterally

The plaintiffs also suggest that the published order cannot

Smith et al. v. Valentine.

be deemed notice to the defendant Smith, not being authenticated by the signature of the clerk.

The statute says that "the judge may by order direct such absent defendant to appear, &c.," "which order shall be  *  * published, &c.," *sec.* 14. It nowhere directs that it shall be thus authenticated before it is published, and it is sufficient to follow the statute.

The provision that the district judge shall not by such decree order any lands to be sold within nine months after the filing of the bill of foreclosure, (*sec.* 58,) means that the sale shall not be fixed for an earlier day, not that the decree fixing it may not be sooner made.

The object of *sec.* 30 was to fix a date within which, and prescribe the means by which, an absent defendant might entitle himself to a re-hearing or review of the cause after the decree had been made, and even after it had been enforced.

The confirmation mentioned in said *section* 30, is the confirmation of the decree, not the confirmation by the court of the doings of its ministerial offices under and by virtue of the decree, namely, a decretal order confirming the sale.

In civil actions, where the service was by publication and security given as provided by *Rev. Stat., ch.* 70, *s.* 165, judgment could be entered and enforced by execution against the defendant's property, though defendant might afterwards be allowed to appear and defend. So, we think, under *section* 30, *ch.* 94, the decree could, on giving security, be enforced by sale, or otherwise. The proceedings in a decree of foreclosure and sale would be merely a mode of enforcing the rights of the creditor, and for the benefit of the debtor. *Whiting vs. Bk. of U. S.*, 13 *Peters*, 6.

The title of the purchaser at such sale would not be affected if the decree should afterwards be reversed upon the defend-

ants being allowed to come in and make defense.   *Whiting vs. Bk. of U. S. supra; Graham vs. Bleeker,* 2 *Daly,* 55.

His title would not be dependent even upon the confirmation of the report of sale of the court, for, the sale being made, deeds shall *thereupon* be executed, vesting the defendant's title in the purchaser, and a bar against him and his heirs forever.   *Sec.* 64.

The conclusion of *sec.* 30, " and the decree shall be executed and performed, as in cases where the defendant has duly appeared," refers, taking the whole section together, to cases, as it seems to us, where no security has been given.   Otherwise the preceding provisions, as to giving security, are senseless.

Moreover as the deed is to pass a good title irrespective of any decree of confirmation of such sale, or reversal of the decree of sale, it would seem singular indeed if a mortgage given by a non-resident defendant could, nevertheless, in no case be foreclosed by sale within the same time as one given by a resident, and that by keeping his whereabouts unknown to the plaintiff, he could for years prevent a sale from taking place, and thereby the payment of his debt.

The testimony tended to prove that by the decree of sale six week's previous notice of the time and place of sale was to be given by publication in two St. Paul newspapers. The plaintiffs offered to prove that, as a matter of fact, there was no notice of the sale given, or published as required by the decree.

Defendant objected on the ground that the decree confirming the sale cut off all inquiry as to the regularity of all proceedings subsequent to the decree of sale, and as irrelevant, incompetent, and immaterial.   The objection was sustained, and plaintiffs excepted.   It is contended that, however the case might have stood, if the defendant had pro-

duced a decree of confirmation, it was for the jury to say whether or not this sale had been in fact confirmed, and that the evidence was competent upon such issue. Neither statute nor rule of court required such publication. As the sale might be good without it, the want of it would be no evidence that such sale was not in fact confirmed. This would be so without reference to the conclusiveness of the decree of confirmation. But the court, at plaintiffs' request, instructed the jury that on the issue as to whether there had been a valid foreclosure of such mortgage or not, if they find that the premises in question were sold by virtue of a decree requiring public notice to be given, and that such decree directed notice of such sale to be published in two public newspapers published in the county of Ramsey, then, unless they find that such notice of sale was given as directed by such decree, they must find for the plaintiffs, which was given with the qualification, that if they find that the sale had been confirmed, that proved conclusively a compliance by the master with all the requirements of the decree of sale in making the sale.

Unless the law required a sale to be so advertised, it could not be essential to the validity of the foreclosure that the directions of the decree of sale should be strictly followed in that behalf. But if it were otherwise, the question for the court in the foreclosure case, upon the coming in of the report, was whether or not the requirements of the decree had been complied with, a question of fact, as to which, the court having jurisdiction to try and decide, its decision must be conclusive until regularly reversed. That question cannot be tried over again in this action. *Kipp vs. Fullerton,* 4 *Minn.* 480; *Hotchkiss vs. Cutting,* 14 *Minn.* 537. *Jorgenson vs. Griffin,* 14 *Minn.* 464. And consequently the qualification was correct. So, too, supposing that publication was material to a

valid foreclosure ; on the question whether the sale had been confirmed or not, evidence that there had been no publication, might tend *prima facie* to show that there had been no confirmation. Still, if. such testimony had been given, the proof that in point of fact a decree of confirmation *was* made is so conclusive, that if the jury had found against it, the verdict must have been set aside as against evidence.

As therefore the evidence if admitted, could not have affected the result, its rejection could in no event be ground for a new trial.

These considerations dispose of all the points made by the plaintiffs.

Order appealed from affirmed.