SKIRVING v. NATIONAL LIFE INS. CO. OF MONTPELIER.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

No. 321.

1. JUDGMENT—EQUITABLE RELIEF—INJUNCTION.
The collection of a judgment at law, fairly and regularly recovered by a purchaser in good faith for full value against a school district on its treasury warrants, will not be enjoined, even if there was a good legal defense to the action, when the consideration was received and is still being enjoyed, and the district officers declined to interpose technical defenses because of the moral obligation to pay. Crampton v. Zabriskie, 101 U. S. 601, distinguished.

2. SAME.
It is no reason for enjoining a judgment regularly recovered at law in a federal court that the record therein fails to show that the citizenship of the assignor of the plaintiff therein was such as to give the court jurisdiction, for judgments of federal courts, rendered upon personal service, are valid until reversed, even if the record fails to show the facts on which jurisdiction rests.

3. SAME—FEDERAL COURT—JURISDICTIONAL AMOUNT.
Query, whether a taxpayer seeking to enjoin in a federal court the collection of a judgment against a school district must not show that his proportion of the taxes necessary to pay the judgment will equal $2,000.

Appeal from the Circuit Court of the United States for the District of Nebraska.

In Equity. Suit by James Skirving, a taxpayer, to enjoin the National Life Insurance Company of Montpelier, Vt., from enforcing a judgment at law against school district No. 44 of Holt county, Neb. The circuit court dismissed the bill. Complainant appeals. Affirmed.

Statement by CALDWELL, Circuit Judge:

On the 15th day of April, 1889, the proper officers of school district No. 44 of Holt county, Neb., issued three orders upon the treasurer of the district, payable to the order of Clark & Leonard Investment Company,—one for $1,-000, due one year after date; and two for $1,500 each, due, respectively, two

and three years after date.  The payees of the orders indorsed them to the appellee, the National Life Insurance Company of Montpelier, Vt., on the 24th day of April, 1889.  The insurance company purchased the orders in good faith, paying $3,740 for them.  The orders were issued and sold to raise money to build a schoolhouse for the district, and the money derived from their sale was used for that purpose.  After the erection of the schoolhouse, the district accepted and used it, and is still using it, as a schoolhouse.  On the 27th day of May, 1892, the appellee brought suit on the law side of the United States circuit court for the district of Nebraska against the school district on the orders.  A summons was issued in the action, and the proper officers of the district accepted service thereof in writing, and at a term of the circuit court held on the 30th day of June, 1892, the plaintiff in the action recovered a judgment by default against the school district for $4,996.98 and costs of suit.  On the 9th day of July, 1892, the appellant filed this bill in the court in which the judgment was rendered against the school district, to enjoin its collection.  The bill alleges that the appellant has been a resident of the district for several years, and is the owner of $5,000 worth of real estate and a large amount of personal property subject to taxation in the district, but it does not allege that his proportion of the taxes to pay the judgment would be $2,000, or any other sum, and the bill is not filed on behalf of the other taxpayers of the district or of the district.  The grounds upon which it is sought to enjoin the judgment are that the officers of the school district had no authority to issue the orders, or to levy a tax to pay them; that, when issued, they were in excess of the amount of indebtedness the district was allowed by law to contract; that their issue was not authorized by a vote of the electors of the district; and that in a suit brought by the appellant in the state court against the treasurer, moderator, and director of the district and the Clark & Leonard Investment Company a decree was rendered on the 24th day of January, 1891, adjudging that the orders had been illegally issued, and enjoining the officers of the school district from paying, and the Clark & Leonard Investment Company from collecting, them.  Long before the commencement of the suit in the state court, Clark & Leonard Investment Company had assigned the orders to the appellees who were not made parties to that suit.  The prayer of the bill is that the appellee may be restrained "from proceeding at law against your orator touching any of the matters in question, or in any manner seeking to enforce the collection of the aforesaid judgment at law."

H. C. Brome, for appellant.

Stephen B. Pound and Lionel C. Burr, for appellee.

Before CALDWELL and SANBORN, Circuit Judges.

CALDWELL, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The officers of the district declined to interpose any technical defense to the action on the orders upon the ground that the school district had received the money and built a school house with it, and in justice and equity ought to repay it; and in this view the taxpayers of the district, save the appellant, seem to have concurred.  There is not the slightest evidence to show that the plaintiff in the judgment at law was guilty of any fraud, misrepresentation, deceit, or misbehavior of any kind in obtaining its judgment against the district.  It purchased the orders in good faith, paying full value for them; and, the orders not being paid at their maturity it brought suit in the regular manner, in a court of competent jurisdiction, and, after due service of summons on the defendant, obtained judgment for the amount of the orders.

The general rules regulating the exercise of the jurisdiction of eq-

uity to enjoin the collection of a judgment recovered at law are well settled. The jurisdiction is not favored, and the grounds upon which it will be exercised are narrow and restricted. It will not suffice to show that injustice is done by the judgment against which relief is sought, and that it would be a hardship to enforce it, or that the defendant had a good legal defense to the cause of action upon which the judgment was rendered; but it must also appear that the defendant was prevented from interposing his defense at law by the fraud or misconduct of the plaintiff, or by some accident or mistake occurring without any fault of the defendant or his agents, and that it would be contrary to equity and good conscience to enforce the judgment. 1 High, Inj. §§ 165–178, and cases cited; 1 Black, Judgm. §§ 356, 366, 378, and cases cited; Insurance Co. v. Hodgson, 7 Cranch, 332; Sample v. Barnes, 14 How. 70, 75; Creath's Adm'r v. Sims, 5 How. 192, 204.

Assuming, but not deciding, that the school district had a good legal defense to the orders, none of the other conditions essential to authorize a court of equity to enjoin a judgment is present in this case. The plaintiff was guilty of no fraud or misbehavior whatever. It asserted its claim against the school district openly, and in the accustomed and orderly manner in which suits are brought and prosecuted. The defendant was not prevented by fraud, accident, or mistake from interposing a defense to the action, if it had one; and certainly it is not shown that it would be contrary to equity and good conscience to allow the judgment to be enforced. On the contrary, the school district itself, through its proper officers, declined to interpose any defense to the suit on the orders upon the ground that it would be contrary to equity and good conscience to contest the repayment of the money under the circumstances. There was no fraud or bad faith on the part of any one connected with the business. The school district received the appellee's money, and used it to build a schoolhouse for the district, which was needed, and which the district accepted and is using. Upon these facts the moral obligation resting upon the district to repay the money was very great, and, after the demand has passed into a judgment, fairly and regularly obtained, a court of equity will not enjoin its collection.

Where it was sought to enjoin a county from paying county orders issued for a claim less meritorious than the claim upon which this judgment was rendered, the supreme court of Ohio said: "This court ought not to interpose by injunction to save the county from the payment of a demand having the sanction of moral obligation." Commissioners v. Hunt, 5 Ohio St. 488; Newcomb v. Horton, 18 Wis. 594. Certainly, after a judgment has been regularly obtained upon such a demand, it would be contrary to any man's sense of equity and good conscience to enjoin its collection upon the complaint of a single discontented taxpayer.

The appellant cites and relies on Crampton v. Zabriskie, 101 U. S. 601, but that case is not in point. That was a suit "brought by other taxpayers of the county to compel the board to reconvey the

land and Crampton to return the bonds, and to enjoin the prosecution of the action to enforce their payment." It will be observed that no judgment had been recovered in that case, and the bill was filed to compel the board to reconvey the land which was the consideration for the bonds upon which suit had been brought. The bill did not seek to keep the consideration received for the bonds, and repudiate the bonds, but its object was to cancel the contract, return the consideration received for the bonds, and then cancel them. In this suit the appellant seeks to have the school district keep the consideration it received for the orders, and to enjoin, at his own suit, the payment of the judgment rendered upon the orders.

It does not appear from the complaint and record in the law case that the citizenship of the assignors of these orders was such as would have enabled them to maintain a suit thereon in the circuit court, and it is urged that for this reason the court rendering the judgment was without jurisdiction, and the judgment void. There are two answers to this contention: The bill does not challenge the jurisdiction of the court rendering the judgment; but if it did, it is well settled that the judgments and decrees of the United States courts rendered upon personal service on the defendant are binding until reversed, though no jurisdiction be shown on the record. If the record fails to show the facts on which the jurisdiction rests,—as, for instance, that the plaintiff and the defendants are citizens of different states; or, where the plaintiff sues as assignee, that his assignor might have maintained the suit, —the judgment may be reversed for error upon a direct proceeding for that purpose, but it is not void, and cannot be attacked collaterally. McCormick v. Sullivant, 10 Wheat. 192; Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U. S. 553, 8 Sup. Ct. 217; In re Sawyer, 124 U. S. 200, 220, 221, 8 Sup. Ct. 482.

A much graver question of jurisdiction arises in the case applicable to the appellant. There is no pretense that his proportion of the tax upon the taxable property in the district required to pay the judgment would amount to $2,000. The judgment itself exceeds that sum, but it is not certain by any means that the amount of the judgment is the criterion for ascertaining the amount in controversy in such a case as this. The bill, in effect, is one to enjoin the collection of taxes to pay the judgment. Upon the allegations in the bill the court cannot assume that appellant's taxes would be more than nominal. If the amount of the appellant's tax is to be regarded as the amount in controversy, it follows that the court below had no jurisdiction of the case. Newcomb v. Horton, 18 Wis. 594; King v. Wilson, 1 Dill. 555, 568; Seaver v. Bigelow, 5 Wall. 208; Woodman v. Latimer, 2 Fed. 842; Massa v. Cutting, 30 Fed. 1; Terry v. Hatch, 93 U. S. 44. But, as this point was not raised in argument, we express no opinion upon it.

The decree of the court below is affirmed.