JOHNSON et al. v. HUNTER et al.

(Circuit Court, E. D. Arkansas, E. D. January 11, 1904.)

No. 110.

1. LEVEES—SPECIAL ASSESSMENTS—SALE OF LAND—NOTICE TO HEIRS.

Where proceedings resulting in the sale of lands belonging to plaintiff's ancestor for nonpayment of levee assessments were had during his lifetime, objections by his heirs, in proceedings to set aside such sale, as to want of notice to them, are immaterial.

2. SAME—COLLATERAL ATTACK.

Where land in controversy was sold for nonpayment of levee assessments in a proceeding at the instance of a district levee board, and such board was not made a party to a subsequent proceeding to cancel the deeds made pursuant to such sale, such action was a collateral, and not a direct, attack on the proceedings resulting in the sale.

**3. SAME—STATUTES—NOTICE—REASONABLENESS.**

Acts Ark. 1895, p. 88, No. 71, authorizing the commencement of proceedings to enforce the collection of taxes on lands owned by nonresidents of the county on a notice to be published weekly for four weeks, is not unconstitutional on the ground that such time is unreasonably short.

**4. SAME—DISCRIMINATION.**

Acts Ark. 1895, p. 88, No. 71, authorizing the sale of lands of nonresidents for nonpayment of taxes due thereon on four weeks' published notice, is not unconstitutional, as discriminating against nonresidents, in that it requires 20 days' notice to be given to a resident, and by reason of the fact that the general statutes of the state in ordinary proceedings provide for a longer notice to nonresidents, and gives them 2 years after rendition of the decree to have the same vacated and make a defense.

**5. SAME—AFFIDAVIT OF NONRESIDENCE.**

Where a sworn complaint in a proceeding to subject nonresident lands to the payment of delinquent levee taxes alleged that the owner was a nonresident, it was sufficient to authorize service by publication without a separate affidavit of nonresidence.

**6. SAME—ORDER FOR PUBLICATION—ENTRY.**

Where a special act for the subjection of nonresident lands to the payment of delinquent levee taxes did not require the entry of an order for publication on the record, or any indorsement thereof on the complaint, neither such entry nor indorsement was required to authorize publication of the notice.

**7. SAME—PROOF OF PUBLICATION— RECITALS OF DECREE — COLLATERAL ATTACK.**

Where a decree for the sale of land belonging to a nonresident for nonpayment of levee taxes recited that the defendants had been constructively summoned by publication, etc., the decree could not be collaterally attacked on the ground that there was no evidence of proof of publication, and that therefore it would be presumed that notice had not been published.

**8. SAME—COMPLAINT—SUFFICIENCY.**

A decree in proceedings for the sale of land for the nonpayment of levee taxes cannot be collaterally attacked on the ground that the complaint did not state a good cause of action.

**9. SAME—COMMISSIONERS—FEES—EXCESSIVENESS.**

A decree authorizing the sale of lands belonging to a nonresident for nonpayment of levee taxes is not subject to collateral attack on the ground that the court allowed the commissioner making the sale greater fees than were allowed by law.

**10. SAME—STATUTORY PROCEEDINGS—JURISDICTIONAL FACTS—RECORD.**

Under Acts Ark. 1895, p. 88, No. 71, providing for the sale of land for nonpayment of levee taxes by means of a proceeding in a superior court of record to foreclose the lien, authorizing the defendant to file an answer, take proofs, and have a hearing as in ordinary chancery cases, the decree of such court foreclosing such lien is not subject to collateral attack on the ground that the record of proceedings did not disclose all the jurisdictional facts.

**11. SAME—STATUTES—CONSTRUCTION—TIME.**

Acts Ark. 1895, p. 88, No. 71, provides for the sale of nonresident lands for nonpayment of levee taxes, and declares that a suit to foreclose the tax lien shall stand for trial at the first term of the court after the complaint may be filed if said four weeks in the case of a nonresident shall expire either before the first day of the term or during the term of the court to which said suits are brought, respectively. *Held*, that such act authorized the hearing to be had four weeks after the first publication of the notice, and not four weeks after the last publication.

Randolph & Randolph, for plaintiffs.

L. P. Berry and A. B. Shafer, for defendants.

TRIEBER, District Judge. This is an action to cancel certain deeds of the defendants to the lands in controversy as clouds on complainants' title thereto, and also a cross-bill on the part of the defendants to confirm their title. The action was first instituted in the chancery court of Crittenden county, Ark., and by the defendants removed to this court on account of a diversity of citizenship. The complainants sue as sole heirs at law of A. H. Johnson, who departed this life intestate on December 4, 1899. The allegations of the bill and the proofs establish the fact that A. H. Johnson acquired a perfect title to the lands by mesne conveyances running back to the original patentee, and the defendants' claim of title is based on purchases made at judicial sales under and by virtue of decrees rendered by the chancery court of Crittenden county in actions brought by the board of directors of the St. Francis Levee District, who, for convenience, will be referred to herein as the "Levee Board," to enforce the collection of levee taxes alleged to have been due on these lands, and for the nonpayment of which the chancery court directed the lands to be sold by a commissioner in chancery appointed by the court for that purpose. Johnson, being a nonresident of the state, was brought into court by publication, but failed to appear. The deeds under which defendants claim show the rendition of the decrees, the sales by the commissioner and purchase by the defendants, a confirmation of the sales by the court, and payment of the purchase money, and are in all respects valid on their face. These purchases were made by the defendant Charles W. Hunter, who thereupon, for a valuable consideration, conveyed an undivided interest in them to his codefendants. The prayer for relief asks for a cancellation of these deeds upon repayment by the complainants of the purchase money paid by Hunter to the commissioner in chancery, with the interest thereon, a tender of which was duly made by them; and also that the decrees on which they are based, and all proceedings in the suit in which they were rendered, may be declared void and of no effect.

The lands in controversy were purchased under decrees in two suits, but practically the validity of defendants' title under both decrees is attacked for the same reasons, and therefore will be treated together, as if there had been only one suit instituted by the levee board, except as to one or two matters in which they differ. As the proceedings in the chancery court which resulted in the sale of these lands were had during the lifetime of plaintiffs' ancestor, this cause must be treated in the same manner as if he were alive, and had instituted this proceeding. If the decrees were valid as against him, complainants, as his heirs at law, are concluded in the same manner as he would be if alive. Therefore all allegations and proofs as to want of notice to complainants are immaterial, and need not be considered.

Counsel for the complainants in the argument strenuously insisted that this is a direct proceeding to impeach the decrees of the chancery court, and not merely a collateral attack upon them. This contention cannot be sustained, as the levee board, which was the sole complainant in those actions, is not made a party to this proceeding. Harwood v. Railroad Company, 17 Wall. 78, 81, 21 L. Ed. 558, is direct in point.

In that case Mr. Justice Hunt, in delivering the opinion of the court, said:

"Mr. Carlisle, the plaintiff in the suit in which the decree is sought to be vacated, is not a party to this proceeding. * * * This is against authority and principle. No case is cited to justify it, and it is believed that none can be found. The judgments of courts of record would be scarcely worth obtaining if they could be thus lightly thrown aside. The absence of 'the plaintiff in the original suit is a fatal defect."

See, also, McCarter v. Neil, 50 Ark. 188, 6 S. W. 731.

The bill must therefore be treated as a collateral attack on the decrees of the chancery court, and subject to the principles of law governing such proceedings. Citations of authorities to maintain that a decree of a superior court of general jurisdiction cannot be attacked unless it is shown that the court is without jurisdiction either of the parties or the subject-matter, or that its decree or judgment was in excess of its jurisdiction, are unnecessary, as that is elementary. The bill is not only very voluminous, but sets up several grounds in its attack on the decrees under which the sales were made which are too frivolous to require attention. In disposing of this case the court will only pass upon those issues which have some little merit in them.

It is claimed that the acts of the Legislature of Arkansas under which these proceedings were had are in conflict with the Constitution of the state of Arkansas, as well as the fourteenth amendment to the Constitution of the United States, in the following matters:

First. That the act does not provide for a reasonable notice of the pendency of the suit to defendants who are nonresidents of the state. The act provides that in proceedings to enforce the collection of taxes due on lands owned by nonresidents of the county in which they are situate, or in the case of nonresidents of the state, notice of the pendency of the suit shall be given by a publication weekly for four weeks prior to the day of the term of court on which final judgment may be entered for the sale of said lands, in some newspaper published in the county where such suit may be pending; and such suit shall stand for trial at the first term of the court after the complaint may be filed, if said four weeks, in the case of a nonresident or unknown defendant as aforesaid, shall expire either before the first day of the term or during the term of court to which said suits are brought respectively, unless a continuance is granted for good cause shown, within the discretion of the court. The act also provides that "the proceedings and judgment shall be in the nature of proceedings in rem." Acts Ark. 1895, p. 88, No. 71.

Learned counsel for the complainants have argued very fully the distinction between proceedings in rem and proceedings in the nature of proceedings in rem. So far as the determination of this cause is concerned, I can conceive of no necessity to go into this matter. It is sufficient that the statutes of Arkansas provide that the liens granted by law against lands within the levee district for the enforcement of the taxes duly levied in conformity with the law may be enforced against the lands of nonresidents of the state, and on whom, for this reason, no personal service can be had, by giving them notice by publication; but there can be no personal decree against the owner. The leading case

on that subject, in which this question was thoroughly discussed, is Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918, where the authorities are carefully reviewed by the court. This rule has been followed by the federal as well as state courts generally. Wehrman v. Conklin, 155 U. S. 332, 15 Sup. Ct. 129, 39 L. Ed. 167; Lynch v. Murphy, 161 U. S. 251, 16 Sup. Ct. 523, 40 L. Ed. 688; Hamilton v. Brown, 161 U. S. 275, 16 Sup. Ct. 585, 40 L. Ed. 691; Ormsby v. Ottman, 29 C. C. A. 295, 85 Fed. 492; McLaughlin v. McCrory, 55 Ark. 442, 18 S. W. 762, 29 Am. St. Rep. 56. The time given—four full weeks—is not so unreasonable as to justify a court to declare a statute solemnly enacted by the Legislature of a state to be void. Bellingham, etc., Co. v. New Whatcom, 172 U. S. 314, 19 Sup. Ct. 205, 43 L. Ed. 460; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369. In Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, it was held that five days' notice to a defendant residing in Virginia to appear in a court held in Texas, when it would take a party traveling continuously four days to reach the place where the court is held, is unreasonable; but from the citation of the various statutes of the different states found in the opinion of the court in that case it will readily be seen that four weeks' notice is not unreasonably short. In Hanover Nat. Bank v. Moyses, 186 U. S. 181, 192, 22 Sup. Ct. 857, 862, 46 L. Ed. 1113, the constitutionality of the bankruptcy act was attacked upon the ground that "the notice provided by the act [ten days] is unreasonably short." But the chief justice, who delivered the unanimous opinion of the court in overruling this contention, said:

"Considering the plenary power of Congress, the subject-matter of the suit, and the common rights and interests of the creditors, we regard the contention as untenable. Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law, and we cannot find anything in this act on that subject, which would justify us in overthrowing its action."

The fact that the complainants reside in the state of Ohio, cannot change the rule. It would hardly be reasonable to expect Legislatures, in enacting laws of this kind, to provide for a longer time to such defendants as reside a greater distance than others. All that the Legislature is required to do is to give a reasonable time, and four weeks is not unreasonable.

In Huling v. Kaw Valley Railway, 130 U. S. 559, 563, 9 Sup. Ct. 603, 605, 32 L. Ed. 1045, a statute of the state of Kansas, which provided for notice by publication for 30 days, was attacked, as is done in this case, and in reply to the objections thus raised to the act Mr. Justice Miller, who delivered the opinion of the court, said:

"The owner of real estate who is a nonresident of the state within which the property lies cannot evade the duties and obligations which the law imposes upon him in regard to such property by his absence from the state. Because he cannot be reached by some process of the courts of the state, which, of course, have no efficacy beyond their own borders, he cannot, therefore, hold his property exempt from the liabilities, duties, and obligations which the state has a right to impose upon such property; and in such cases some substituted form of notice has always been held to be a sufficient warning to the owner of the proceedings which are being taken under the au-

thority of the state to subject his property to those demands and obligations. Otherwise the burdens of taxation, and the liability of such property to be taken under the power of eminent domain, would be useless in regard to a very large amount of property in every state of the Union. It is therefore the duty of the owner of real estate who is a nonresident to take measures that in some way he shall be represented when his property is called into requisition; and, if he fails to do this, and fails to get notice by the ordinary publications which have usually been required in such cases, it is his misfortune, and he must abide the consequences. Such publication is 'due process of law' as applied to this class of cases"—citing Harvey v. Tyler, 2 Wall. 328, 17 L. Ed. 871; Secombe v. Railroad Co., 23 Wall. 108, 23 L. Ed. 67; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206.

The acts of the Legislature under which these proceedings were had were public acts, of which Johnson was bound to take notice. They advised him of the fact that at the times and places mentioned in the law his lands would be assessed and taxes levied thereon for levee purposes; that, unless these taxes were paid within the time prescribed by the acts, suits would be instituted in the chancery court to enforce the collection by sale; that, being a nonresident, he would be brought into court by publication in a newspaper printed and published in the county in which the lands lie. Therefore his duty, as stated by Mr. Justice Miller, was "to take measures that in some way he shall be represented when his property is called into requisition, and if he fails to do this, it is his misfortune, and he must abide the consequences."

Second. That the act discriminates against nonresidents. There is not a shadow of foundation for this contention, unless the fact that the act requires 20 days' notice to be given to a resident, while four weeks' notice is required to be given to a nonresident, has that effect. As the statute requiring a notice of only four weeks to defendants constructively summoned is held to be reasonable, there is no reason why courts should interfere with the discretion vested in the legislative department by the Constitution. The Legislature thought that 4 weeks' notice to a nonresident was sufficient, while 20 days would be long enough notice to a resident. Nor does the fact that the general statutes of the state provide in ordinary proceedings for a longer notice to be given to nonresidents to make their defense, and also granted them two years after the rendition of the decree for the purpose of vacating it and making a defense, affect the validity of the act. There is nothing in the Constitution of the state of Arkansas which prohibits the Legislature from passing such a special act, if, in its judgment, a general law will not subserve the purpose sought as well as a special act. This was expressly decided in Carson v. St. Francis Levee District, 59 Ark. 513, 27 S. W. 590, in which the constitutionality of the act under which these proceedings were had was questioned. Courts have nothing to do with the policy of legislation. That has been wisely intrusted by the Constitution to the legislative department, and, as the state government is not one merely of delegated powers, one who questions the constitutionality of a legislative enactment of a state must affirmatively show that it is within the restrictions or prohibi-

tions of the national or state Constitution. If any doubts arise in controversies of this kind, they must be resolved in favor of the validity of the legislative act.

It is next claimed that in one of the suits under which defendants claim title there was no affidavit of Johnson's nonresidency, and therefore there was no warrant for service by publication. It may be conceded that the failure of an affidavit of nonresidency is fatal to a proceeding in which the defendant was not served personally, and entered no appearance, but was only brought into court by publication; but the record in that case shows that the complaint specifically charges that Johnson was a nonresident of the state, and to this complaint there is an affidavit that all the allegations therein contained are true. This is sufficient under the Code of Practice of the state of Arkansas. Sannoner v. Jacobson, 47 Ark. 31, 14 S. W. 458, where it was held that, while there can be no attachment without a complaint, the affidavit and complaint may be included in one paper, if it contains all the essentials of both. See, also, Ludlow v. Ramsey, 11 Wall. 581, 20 L. Ed. 216; Wilson v. Teague, 95 Ky. 47, 23 S. W. 656; Allen v. Ray, 96 Mo. 542, 10 S. W. 153. Nor is there any merit in the claim that the clerk failed to indorse an order for the publication of notice on the complaint, nor entered such order on the records of the court. Gregory v. Bartlett, 55 Ark. 30, 17 S. W. 344, is relied on to sustain this contention, but that case was instituted under a special act requiring the clerk of the court to enter the order for publication on the record, and the publication was to be simply a copy of that order. The act under which these proceedings were had required no such entry, nor any indorsement on the complaint, and, of course, none was necessary. Nor does Beidler v. Beidler (Ark.) 74 S. W. 13, apply, for that was an action under the general statute which requires the warning order to be indorsed on the complaint, but, aside from that, that case was determined on appeal, and was not a collateral attack on the judgment. For this reason the expression of the learned judge who delivered the opinion of the court that the failure to indorse the warning order on the complaint deprived the court of jurisdiction is obiter dictum. That such an omission is not jurisdictional was expressly decided in Smith v. Valentine, 19 Minn. 452 (Gil. 393).

It is next insisted that in one of the cases (No. 589) there is no evidence of proof of publication, and therefore the presumption is that there was no such publication of the notice. The decree in that case recites that the court finds that Johnson and the other nonresidents named in the decree "were severally constructively summoned by publication in a newspaper published in Crittenden county, Ark., weekly, for four consecutive weeks, before this day, proof of which has been previously filed herein." The decree in the second case (No. 628) contains a similar finding by the court, and the agreed statement of facts also shows that among the papers in that case a copy of the notice, with the proof of publication thereof, is found, marked "Filed" by the clerk of the court. It is the settled rule of this state that a recital in a decree that notice was given as required by the statute, without specifying how the notice was given, is valid as against collateral attack,

127 F.—15

if the law does not expressly require the evidence of publication to be made a part of the record, either by entering it at large on the record or by filing it. McLain v. Duncan, 57 Ark. 49, 20 S. W. 597; McConnell v. Day, 61 Ark. 464, 33 S. W. 731. See, also, Foster v. Givens, 14 C. C. A. 625, 67 Fed. 684; Koons v. Bryson, 16 C. C. A. 227, 69 Fed. 297. The chancery court having determined that there was a publication, and proper proof thereof, it is conclusive in this collateral proceeding. Applegate v. Lexington, etc., Mining Co., 117 U. S. 269, 6 Sup. Ct. 742, 29 L. Ed. 892; Foster v. Givens, 14 C. C. A. 625, 67 Fed. 691; Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Eltonhead v. Allen, 119 Fed. 126, 55 C. C. A. 671; Coons v. Throckmorton, 25 Ark. 60; Porter v. Dooley, 66 Ark. 1, 49 S. W. 1083; Porter v. Tallman, 68 Ark. 211, 56 S. W. 1071.

It is urged that the complaints in those proceedings did not state a good cause of action. That was a question clearly within the province of the chancery court to determine, and, having decided, as is evidenced by the rendition of the decrees, that the complaints were sufficient to entitle complainant to the relief asked, any error of that court in this determination can only be corrected by appeal, and not by a collateral attack in this court. Griswold v. Hazard, 141 U. S. 260, 290, 11 Sup. Ct. 972, 999, 35 L. Ed. 678; Seaman v. Ins. Co., 30 C. C. A. 212, 86 Fed. 493.

The decrees are also attacked upon the ground that the court allowed the commissioner excessive fees for making the sale. Without determining whether this allegation is true, it is sufficient to say that, if the court did allow the commissioner greater fees than were warranted by law, it would not vitiate the decree so as to subject it to a collateral attack. Decrees of superior courts would, indeed, rest on a weak foundation if a purchaser at a judicial sale had under such a decree could have his purchase annulled in a collateral proceeding because the court committed an error in allowing the master who made the sale a greater compensation than the statute permitted. Counsel referred to a number of decisions in which it was held that sales made for the nonpayment of taxes by ministerial officers without the intervention of any proceedings of a court, and which included illegal fees, are void; but no case is cited in which it has been held that a judicial sale under a decree of a court of record, having jurisdiction of the person and subject-matter, has been declared void on such a ground, and none it is believed can be found.

It is further claimed that all the jurisdictional facts must appear of record, otherwise the presumption is that there was no jurisdiction, and that there is nothing of record to show that the court ever obtained jurisdiction of the person of Mr. Johnson. Without going into the facts, this claim cannot be sustained. It is based upon the fact that this is a statutory proceeding. But the rule that all matters necessary to confer jurisdiction on a court where the proceedings are statutory is not as broad as contended by learned counsel. It applies only to such statutory proceedings as are to be conducted in a special, and often summary, manner, and not according to the usual forms of court procedure, and which do not belong to it as a court of general jurisdiction. Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959;

Ex parte Cuddy, 131 U. S. 285, 9 Sup. Ct. 703, 33 L. Ed. 154; Holmes v. Buckner, 67 Tex. 109, 2 S. W. 452. The cases relied upon by counsel have no application to the facts as they appear in this case. Gibney v. Crawford, 51 Ark. 34, 9 S. W. 309, was a case in which the county courts were authorized to call in county warrants for examination and classification in a summary manner, the notice to be given by publication only. Hindman v. O'Connor, 54 Ark. 627, 16 S. W. 1052, 13 L. R. A. 490, was a case in which the statute involved was one which authorized ex parte proceedings to remove the disabilities of minors. In Morris v. Dooley, 59 Ark. 483, 28 S. W. 30, 430, the statute was one which empowered probate courts to authorize the adoption of infants, and make them heirs on an ex parte hearing. In the cases at bar the proceedings were to be and were conducted according to the usual methods of procedure prevailing in chancery courts in cases of foreclosure of mortgages. Every defendant had a right to file an answer, take proofs, and have a hearing as in ordinary chancery cases. There was nothing special or summary in the procedure after the defendant had appeared in court. If, after due notice, he made default, the proceedings would then be conducted in the same manner as in other cases instituted in a chancery court of the state, and the court, being one of general jurisdiction, was vested with the jurisdiction to foreclose liens on real estate. The true rule is that, if the record of a superior court, although it be one of limited jurisdiction, fails to contain the allegations necessary to confer jurisdiction, its judgment or decree will be reversed for that cause on appeal or writ of error; but until reversed such judgment or decree is conclusive, and not subject to collateral attack. Thus the courts of the United States are statutory courts of limited jurisdiction, and the complaint filed or the petition for removal, in case the cause is one removed to the national court from a state court, must contain all the allegations necessary to show that the cause is one within the jurisdiction of the national courts. While a judgment rendered by such a court in a cause the record of which fails to contain the necessary jurisdictional allegations will be reversed upon appeal, even if not raised by the parties in the trial court nor assigned as error in the appellate court, it cannot be collaterally attacked. Skillern v. May, 6 Cranch, 267, 3 L. Ed. 220; McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; Des Moines Navigation Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217, 31 L. Ed. 202; Cutler v. Huston, 158 U. S. 423, 15 Sup. Ct. 868, 39 L. Ed. 1040; Skirving v. Insurance Co., 8 C. C. A. 241, 59 Fed. 742; Rice v. Adler-Goldman Commission Co., 18 C. C. A. 15, 71 Fed. 151.

The only other question worthy of consideration is whether the hearing under the statute was to be had four weeks after the first or last publication of the warning notice. Counsel for complainants insist on the latter construction. Whether rendering a judgment before the time fixed for filing the answer is merely a clerical misprision under section 4196, Sand. & H. Dig. Ark., which certainly would not make the decree a nullity subject to collateral attack, it is unnecessary to determine in this case, although under the provisions of section 4197 of these statutes a judgment or decree may be vacated by the court for such misprision after the expiration of the term. The language of

the statute is too clear to justify such a construction. The act provides:

"And the said suit shall stand for trial at the first term of the court after the complaint may be filed if said four weeks in the case of a nonresident or unknown defendant as aforesaid * * * shall expire either before the first day of the term or during the term of the court to which said suits are brought respectively."

The general rule is that, unless the statute requires the last publication to be a certain time before the hearing, it is sufficient that the first publication was the required time before rendition of the decree or judgment. Colman v. Anderson, 10 Mass. 105; Harper v. Ely, 56 Ill. 179; Fry v. Bidwell, 74 Ill. 381.

It follows from what has been said that the decrees under which defendants claim title are valid decrees, and that complainants are entitled to no relief, but that defendants are entitled to a decree confirming their title as against the complainants.

Since preparing the foregoing opinion the Supreme Court of Arkansas in Clay v. Bilby (delivered on January 9, 1904) 78 S. W. 749, expressly overruled Gallagher v. Johnson, 65 Ark. 90, 44 S. W. 1041, one of the principal cases relied on by counsel for complainants, and limited the rule that, unless the warning order is by the clerk indorsed on the complaint, the court is without jurisdiction of the person of the defendant, announced in Beidler v. Beidler (Ark.) 74 S. W. 13, to direct proceedings on appeal, and not applicable to proceedings in which the judgment of the court is attacked collaterally.