## FOSTER et al v. GIVENS et al.

### (Circuit Court of Appeals, Sixth Circuit. May 7, 1895.)

#### No. 222.

1. JUDGMENTS—COLLATERAL ATTACK—PRESUMPTIONS.
    Where a bill to enforce a vendor's lien in a court of general jurisdiction alleged a sale to defendant of several parcels at a gross price, but the record does not show the location of such parcels, it will be presumed, in a collateral attack on the decree, that the land was within the territorial jurisdiction of the court.

2. SAME—RECITALS—SERVICE BY PUBLICATION.
    The recital in a judgment by default that an order of publication had been "duly made and filed" is sufficient on collateral attack, in the absence of record evidence showing noncompliance with the statute.

3. SAME.
    In a collateral attack on a judgment by default, an objection that the order of publication is not dated, and that, therefore, it does not appear that such order was made before publication, cannot be sustained, where the publisher's certificate is annexed to the order, and states that it was published, etc., as the order must have been made before it could have been published.

4. SAME.
    A recital in a judgment by default that publication had been duly made and filed, and the publisher's certificate that the order was published "ten weeks," are sufficient, on collateral attack, to show publication for "two months successively," as required by the order and by statute.

5. WRITS—SERVICE BY PUBLICATION—WHEN AUTHORIZED.
    Under Act Ky. Dec. 19, 1796 (1 Litt. Laws Ky. 592), authorizing service by publication in certain cases, on satisfactory proof that defendant is "out of the commonwealth," publication may be ordered on proof that defendants are not "inhabitants" of the commonwealth.

Error to the United States Circuit Court for the District of Kentucky.

Ejectment by Robert M. Foster and others against James G. Givens and others. There was a judgment for defendants, and plaintiffs bring error.

J. O'Hara and O'Hara & Rouse, for plaintiffs in error.

Wilkins G. Anderson, for defendant in error Pine Mountain Iron & Coal Co.

Wm. Ayres, for defendants in error F. Marimon and Monarch Coal & Timber Co.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. This is an action of ejectment brought by the plaintiffs in error who were plaintiffs in the circuit court. The action was for the recovery of a tract of land described as containing 50,000 acres, being the same patented by the state of Kentucky, February 28, 1779, to Abraham Morehouse. Plaintiffs claimed as heirs at law of Henry Banks, and, for the purpose of deraigning title to their ancestor from the patentee, Abraham Morehouse, offered in evidence a transcript of a record from the circuit court

of Franklin county, Ky., wherein their ancestor was a complainant in equity, and Philip Henry Neving Tot Bastrop and the unknown heirs of Abraham Morehouse were defendants. They sought to show by the final decree in that cause that the land now in controversy had been sold, by and through commissioners therein appointed, to satisfy an equitable lien thereon in favor of Henry Banks for purchase money due from the said Morehouse and Bastrop; and that the said lands had been sold and conveyed by the commissioners who executed the decree to the said Henry Banks, by virtue of the power in them vested by the decree aforesaid. Upon the objection of the defendants, that record was excluded. There being no other evidence tending to show title in said Henry Banks, the court instructed the jury to find for the defendants. Plaintiffs assign this action of the court in excluding said record, and in the peremptory instruction, as error, and this is the only question for decision.

The defendants in error justify the ruling of the court, upon several distinct grounds, any one of which, if well taken, renders the decree void as to the heirs of Abraham Morehouse, and therefore inadmissible as a link in the chain of title sought to be established by the plaintiffs in error. The first objection to the decree was to the jurisdiction of the court over the tract of land involved in this suit. The transcript tendered in evidence purports to be a bill in chancery filed in the circuit court of Franklin county, Ky. That court was one of general jurisdiction in both suits at common law and in chancery. Under the statute organizing circuit courts, its territorial jurisdiction was limited to the body of the county of Franklin. It has not been contended that its jurisdiction was limited to cases involving lands wholly within the county. On the contrary, it has been properly admitted that if any part of a body of land, or one of several parcels of land, subject to a common mortgage or equitable lien, be within the county in which the suit is brought, the court will acquire jurisdiction over the entire body of land, or the several parcels subject to the common mortgage or claim of lien, and may effectively exercise jurisdiction with reference to the entire subject-matter of the suit. This principle of local jurisdiction is familiar law, and the Kentucky courts, at an early day, expressly so announced it. Dunn v. McMillen, 1 Bibb, 409; Cave v. Trabue, 2 Bibb, 444; Brown v. McKee, 1 J. J. Marsh. 476; Owings v. Beall, 3 Litt. 104. The circuit courts of Kentucky, being courts of general common-law and equity jurisdiction, and not courts of special and limited jurisdiction, are within the well-known rule which presumes, upon a collateral attack, that a jurisdiction actually exercised by such a court was rightfully exercised, until the contrary clearly appears. Such courts of record are competent to decide upon their own jurisdiction, and to exercise it to final judgment. This applies to both jurisdiction over the subject-matter and over the persons of the defendants, and, when a judgment of such a court is collaterally brought in question, every reasonable presumption will be indulged in favor of the rightful exercise of jurisdiction, and they are not required to spread upon their records the facts and evidences upon which their jurisdiction

was rested. Freem. Judgm. § 122; Pope v. Harrison, 16 Lea, 90. Grignon's Lessee v. Astor, 2 How. 337. In Galpin v. Page, 18 Wall. 366, Justice Field, in speaking for the court concerning the presumptions in favor of the rightful exercise of jurisdiction by courts of general, and not limited, powers, said:

"It is presumed to have jurisdiction to give the judgment it renders, until the contrary appears. And the presumption embraces jurisdiction, not only of the cause or subject-matter of the action in which the judgment was given, but of the parties also. The former will generally appear by the character of the judgment, and will be determined by the law creating the court or prescribing its general powers. The latter should regularly appear by evidence in the record of service of process upon the defendant, or his appearance in the action. But where the former appears the latter will be presumed."

As already stated, the circuit court of Franklin county was a court of general common-law and equity jurisdiction. If we turn to the decree pronounced in the cause of Henry Banks v. Bastrop and the Heirs of Morehouse, we find that the judgment rendered was in regard to a contract for the sale of numerous parcels of land, and that the court adjudged that Bastrop and Morehouse were indebted to the complainant, Banks, in a sum in excess of $50,000, as purchase money for a large body of lands lying in distinct tracts, some of which were described as being in counties other than Franklin, while the locality of others did not appear. The court adjudged one contract, embracing many parcels lying in different counties, and adjudged to the complainant a common, equitable lien, embracing all the parcels sold, and that all the tracts should be sold for the satisfaction of a unit vendors' equity. Clearly, the power to hear and adjudge a cause presenting questions of the kind adjudged was within the jurisdiction of the circuit court for Franklin county.

"The power to hear and determine a cause is jurisdiction. It is coram judice whenever a case is presented which brings this power into action. If the petitioner states such a case in his petition that on a demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction. Whether, on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction conferred by the filing of a petition containing all the requisites, and in the manner prescribed by law." U. S. v. Arredondo, 6 Pet. 709.

If we turn to the bill filed by the complainant Banks, we find that it substantially alleged: (1) That the complainant contracted and sold four tracts or parcels of land to Abraham Morehouse for the consideration of $17,500, no part of which had been paid. One of those tracts is the one now involved. Concerning that tract, it was alleged that it had been located and surveyed by the complainant and one Phillip Barbour, and that Barbour had assigned his interest in the survey to the complainant; that Morehouse had caused a patent to issue to himself, and thereby acquired the legal title. (2) It alleged that, as a part of the same contract, the complainant had contracted to furnish the said Morehouse other lands to the aggregate value of $32,500, these other lands "to be ascertained by the appraisement of good, disinterested men, on oath," reference being made to the contract itself for the details of the agreement. (3)

It further alleged that subsequently a contract was made with one Philip Henry Neving Tot Bastrop, by which said Bastrop agreed to receive, "in satisfaction" of the aforesaid agreement with Morehouse, certain parcels of land described, and to pay therefor $32,500, and also to pay for the four parcels already conveyed to Morehouse the further sum of $17,500 and further to pay to certain persons designated by Banks certain other sums of money mentioned in the bill, and that he engaged "to release and entirely exonerate the said Banks from the aforementioned contract with the said Abraham Morehouse." (4) The bill alleged that neither the said Morehouse nor the said Bastrop had paid any part of the $50,000 which each had obligated himself to pay. Complainant therefore charged that he held "an equitable lien on the said several tracts or parcels of land in the nature of a mortgage for the purpose of securing the payment of the aforesaid several sums of money, debts, and contracts. * * * *" (5) The bill claimed that both Morehouse and Bastrop were indebted to him in the full sum of $50,000, of which $17,500 was for the first four parcels assigned and transferred to Morehouse, and the remaining $32,500 was for the other parcels engaged to be furnished Morehouse, and received by Bastrop, under the circumstances stated, in satisfaction of the Morehouse contract.

Without further going into the details of the bill, it is clear that a case was stated within the general equitable jurisdiction of the court. It may be admitted that no very clear case was alleged in regard to Morehouse's liability for the lands subsequently transferred to Bastrop. Neither is any very clear case stated in regard to any other or further liability, as against Morehouse, than that arising upon his agreement to pay $17,500 for the four parcels originally transferred to him. The objection to jurisdiction concerns alone the locality of the parcels of land embraced within the common vendor's equity asserted against all the parcels, whether conveyed to Morehouse or Bastrop. The bill is silent as to the location of the four parcels transferred to Morehouse. As to those parcels transferred to Bastrop, it appears on the face of the bill that many of them were in counties other than Franklin. As to the remainder, there is no allegation by which the court could determine their situation. With reference to the four tracts sold and conveyed to Morehouse, and for which he was to pay $17,500, evidence is found in that record that the large tract of 50,000 acres, being the one involved in this action, was wholly situated in Lincoln county, and the proof in this cause confirms that evidence. There is nothing in the record from the Franklin circuit court which throws any light upon the locality of the other three parcels sold to Morehouse. Neither does it throw any light upon the locality of many of the parcels transferred to Bastrop. The evidence submitted in the cause now on trial did establish that several of the parcels included in the Bastrop agreement were within the limits of Franklin county, as constituted at the time of the Banks suit. Now, on this state of facts, what are the presumptions with reference to the local jurisdiction? If complainant, Banks, has stated on the face of his bill facts sufficient to support his contention of a gross sale of lands to Morehouse

and Bastrop for a gross price, and sufficient to support his claim that the subsequent transfer of other lands to Bastrop was in satisfaction of his agreement to furnish lands to Morehouse, and that Morehouse was bound by Bastrop's action in receiving such other lands, then jurisdiction existed, for it is admitted that some of the parcels thus transferred to Bastrop were in fact within Franklin county, as then organized. But if it be admitted that the allegations of the bill do not state a case supporting the decree, in so far as it was adjudged that Morehouse's liability was for $50,000, and that the sale to him was a gross sale for a gross price, and that each parcel was liable for the whole price, how then stands the case? Would that defeat the local jurisdiction of the court, in so far as the decree is relied upon as concluding the heirs of Morehouse? We think not. A case of a sale of four parcels to Morehouse was stated, for the gross sum of $17,500. On the allegations of the bill, that sale was a unit sale, for a unit price, and furnished a foundation for a suit to have declared a vendor's equity as between buyer and seller That equitable lien might be asserted against all the parcels in any county in which any one of the parcels, or any part of one parcel, might be found. Jurisdiction did not depend upon the locality of the lands embraced in either of the contracts set out being stated on the face of the complainant's bill. Good pleading undoubtedly required that the pleadings should state a case within the jurisdiction. But if no averment appears showing defect of jurisdiction, it will be presumed, upon a collateral attack, that the subject-matter of the suit was within the territorial jurisdiction of the court. "A court of general jurisdiction, proceeding within the general scope of its powers, is presumed, in an equitable proceeding, to have had jurisdiction in the case until the contrary appears. This presumption extends to all jurisdictional facts concerning which the record is silent." Galpin v. Page, 18 Wall. 350; Grignon's Lessee v. Astor, 2 How. 319; Pope v. Harrison, 16 Lea, 82. The record in a suit for foreclosure of a mortgage need not show that the land mortgaged lies in the county. In the absence of an averment to the contrary, this will be presumed until the contrary is shown. Brownfield v. Weicht, 9 Ind. 394; Markel v. Evans, 47 Ind. 326. These principles, applied to this case, would operate to raise a presumption that the four parcels of land sold by Banks to Morehouse were within the territorial jurisdiction of the Franklin circuit court, nothing contradicting that presumption appearing on the face of the pleadings or decree. The introduction of evidence of the fact that one of them was in another county will leave this presumption unaffected, for non constat that the others, or some part of the others, were not in Franklin county. The record should, therefore, be admitted until it is affirmatively shown that no part of the parcels transferred to Morehouse were within the territorial limits of Franklin county, as then constituted. Aside from this, we are of opinion that a sufficient case was presented by the pleadings to give the court jurisdiction to hear and determine the claim that Morehouse was liable to the full extent of $50,000, and to hear and determine the claim that the sale to him was a unit sale, for a unit price. That general

question was presented, and the court acquired the power to adjudge the question thus involved, and jurisdiction is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a good cause of action. Hunt v. Hunt, 72 N. Y. 217. It may be that the facts stated in the pleadings would not, when judicially weighed, be held sufficient to entitle the plaintiff to the full relief prayed. But the power to hear and determine as to the sufficiency of the facts stated as a basis is jurisdiction. An improper decision upon such facts would be merely erroneous. The decree would not be void. If, therefore, any one of the parcels upon which the plaintiff claimed a unit lien was within the county of Franklin, the territorial jurisdiction to try the question of the fact of any such lien existed. If, in the exercise of that jurisdiction, the court erred, the remedy was by appeal, or writ of error. The decree was not for that reason void.

Holding, as we do, that the presumptions favorable to the rightful exercise of jurisdiction with reference to the res have not been overcome by evidence, we pass to the question as to jurisdiction over the persons of the defendants. The questions for decision upon this branch of the case do not seem to have been expressly raised or decided by the circuit court. But inasmuch as it appears that the record was admitted by the court, subject to the objection we have already disposed of, and excluded at the conclusion of all the plaintiffs' evidence, without any specific reason being assigned, it may be assumed that, if excluded for any reason rendering the decree absolutely void, the judgment for the defendants, under instruction of the court, should not be reversed.

Banks' bill charged that Morehouse was dead, and that the names and residences of his heirs were unknown, but that they were not residents of Kentucky. It also charged that Bastrop was not an inhabitant of Kentucky, and prayed that the court "would direct a publication against the defendants, as nonresidents, as the law directs." The bill was marked as filed July 18, 1823. By an affidavit signed and sworn to by the complainant, Banks, and attached to the bill, it was averred that Bastrop was not "an inhabitant of Kentucky," and that "the heirs of Abraham Morehouse are not inhabitants of Kentucky, as he believes, and that he does not know the names or residences of said heirs." Following the bill and affidavit in the record appears what purports to be an order for publication, undated. This order is in these words:

"Commonwealth of Kentucky, Franklin County—Set.

"Henry Banks, Complainant, v. Philip Henry Neving Tot Bastrop, or his Heirs, etc., Defendants. Chancery.

"This day the complainant, by his counsel, and the defendant, Philip Henry Neving Tot Bastrop, or his heirs, and the unknown heirs of Abraham Morehouse, dec'd, having failed to enter their appearance herein and answer the complainant's bill, and it appearing to the satisfaction of the court that the said defendants are not inhabitants of this commonwealth, therefore, on motion of the compl't, by his counsel, it is ordered that unless the defendants do enter their appearance herein on or before the first day of the next term of this court, and answer the complainant's bill, the same will be taken against them for confessed. And it is further ordered that a copy of this

order be forthwith inserted in some authorized newspaper printed in this commonwealth, for two months, successively.

"F. P. Blair, C. F. C. C."

None of the defendants appeared or defended, and on the 17th March, 1824, an order pro confesso was entered, in these words:

"The defendant having failed to answer the complainant bill, as required by law, it is therefore ordered that the same be taken for confessed, for default. And thereupon the complainant submitted the cause to the court for trial and decree."

On the day next ensuing, a final decree was rendered, which contains the following recital:

"At a court held on the 18 March, 1824, this cause came on to be argued by the counsel for complainant, and upon examination of the depositions, and it appearing to the court that an order of publication against the defendants has been duly made and filed according to law, the court doth order, adjudge, and decree," etc.

Then follows a lengthy decree upon the merits of the case.

Under any fair and reasonable construction of this recital, it must be conceded that this is to be taken as an adjudication of two facts: First, that an order of publication had been made, in pursuance of the statute; second, that due publication of that order had been made, and the evidence thereof filed. The statute then in force regulating publication for absent defendants was the Kentucky act of December 19, 1796 (1 Litt. Laws Ky. 592), as amended by the act of December 22, 1803, which repealed so much of the former act as required, in addition to newspaper publication, a publication at the door of the courthouse, and upon a Sunday, in some church or meetinghouse, during the hours of divine service, and also pre scribed what should be sufficient evidence of the newspaper publication. So much of the act of 1796 as was still in force, and relevant to this controversy, prescribed that where a suit was brought in any court of chancery, concerning any "absent defendant," "the court may, on satisfactory proof to them made, that such defendant or defendants is or are out of this commonwealth, or that upon inquiry at his, her or their usual place of abode, he, she, or they could not be found, make any order similar to that which is directed to be made in cases of absent debtors, adapting the same to the nature of the case, a copy of which order shall be published in like manner as is directed in case of absent debtors, and thereupon, if the appearance of such absent defendant or defendants be not entered, the complainant may proceed in like manner as if an appearance had been entered." The other provisions of the act relate to the mode of publication for absent debtors, and prescribe that "the court shall appoint some day in the succeeding term for the absent defendant or defendants to enter his, her or their appearance to the suit," etc., "a copy of which order shall be forthwith published in the Kentucky Gazette or Herald, and continued for two months successively." By the act of 1803 it was provided "that a certificate of the printer in whose paper the said order shall have been published agreeably to the said act, that it has been so done, together with a copy of said publication, shall be deemed and held sufficient evidence of that fact."

Upon the very great weight of authority, it would seem that a judgment recital such as that found in the decree under consideration would be conclusive in a collateral attack, unless there shall be found in the record itself the evidence of the steps taken to obtain jurisdiction, and that evidence should contradict the recital. The cases are largely cited in Freem. Judgm., at section 124 et seq. The cases of Sidwell v. Worthington's Heirs, 8 Dana, 77; Pope v. Harrison, 16 Lea, 82–92; and Applegate v. Mining Co., 117 U. S. 269, 6 Sup. Ct. 742, are typical cases on this aspect of the question. In the case of Sidwell v. Worthington's Heirs, cited above, the record was offered in evidence as a link in the chain of title to one of the parties. The record was rejected by the court because the court was of opinion that there was not sufficient proof that the order of publication against the nonresident defendant therein had been published according to law. There was, however, a judgment recital in the record offered that the court had been satisfied by sufficient proof that the order of publication had been duly published according to law. Upon appeal the supreme court said:

"Although, as has been decided, the decree, as to Evans, may be deemed erroneous, on the ground that the record does not exhibit the evidence of publication, and thus show that it was legal and sufficient, yet this decree is not therefore void as to him, because the record shows the fact that there was some evidence of publication, deemed sufficient by the circuit judge, and we will not now presume that there was no regular publication."

The case of Applegate v. Mining Co., heretofore cited, is peculiarly applicable, because it arose in Kentucky, and involved a construction of the same statute now under consideration. The record which had been excluded contained an order for publication, but no evidence of publication appeared, and there was no recital or finding by the court that there had been a due publication. After an elaborate review of the cases bearing upon the question, the court concludes by saying:

"The result of the authorities, and what we decide, is that where a court of general jurisdiction is authorized in a proceeding, either statutory, or at law or in equity, to bring in, by publication or other substituted service, nonresident defendants interested in, or having a lien upon, property lying within its territorial jurisdiction, but is not required to place the proof of service upon the record, and the court orders such substituted service, it will be presumed, in favor of the jurisdiction, that service was made as ordered, although no evidence thereof appears of record, and the judgment of the court, so far as it affects such property, will be valid. The case of Galpin v. Page, 18 Wall. 350, cited by counsel for defendants, is not in conflict with this proposition. The judgment set up, on one side, and attacked, on the other, in that case, was rendered on service by publication. The law permitted service to be made by publication only where certain facts were made to appear to the satisfaction of the court, and the court, by a precedent order, which must necessarily appear of record, authorized service to be made by publication. But the record showed no such order, and the publication, therefore, was the unauthorized act of the party, and appeared affirmatively to be invalid and ineffectual."

But it has been urged that this is not the case of a silent record; that, upon the contrary, the evidence as to the steps taken to acquire jurisdiction appears in the record; and that this evidence operates to contradict the recital in the decree, and must prevail. In Galpin

v. Page, 18 Wall. 366, the rule is thus stated concerning an inquiry, on collateral attack, as to the jurisdiction of the court over the persons of the defendants:

"But the presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed, or the averment is made. When, therefore, the record states the evidence, or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point; and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred. If, for example, it appears from the return of the officer, or the proof of service contained in the record, that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place; or if it appear, in like manner, that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also. Were not this so, it would never be possible to attack collaterally the judgment of a superior court, although a want of jurisdiction might be apparent upon its face. The answer to the attack would always be that, notwithstanding the evidence or the averment, the necessary facts to support the judgment are presumed."

In Settlemier v. Sullivan, 97 U. S. 444–448, Justice Field, who delivered the opinion of a majority of the court, said, as to the effect of a judgment recital of jurisdictional facts where the evidence as to the steps taken is found in the record:

"Here it is contended that the recital in the entry of the default of the defendant in the case in the state court, 'that, although duly served with process, he did not come, but made default,' is evidence that due service on him was made, notwithstanding the return of the sheriff, and supplies its omission. But the answer is that the recital must be read in connection with that part of the record which gives the official evidence prescribed by the statute. This evidence must prevail over the recital, as the latter, in the absence of an averment to the contrary, the record being complete, can only be considered as referring to the former. We do not question the doctrine that a court of general jurisdiction, acting within the scope of its authority,—that is, within the boundaries which the law assigns to it with respect to subjects and persons,—is presumed to act rightly, and to have jurisdiction to render the judgment it pronounces, until the contrary appears. But this presumption can only arise with respect to jurisdictional facts, concerning which the record is silent. It cannot be indulged when the evidence respecting the facts is stated, or averments respecting them are made. If the record is silent with respect to any fact which must have been established before the court could have rightly acted, it will be presumed that such fact was properly brought to its knowledge. But if the record gives the evidence, or makes an averment with respect to a jurisdictional fact, it will be taken to speak the truth, and the whole truth, in that regard; and no presumption will be allowed that other and different evidence was produced, or that the fact was otherwise than as averred."

The first insistence of the defendants is that the order of publication is not dated, and that it does not, therefore, appear when that order was made, and that, if not made before publication, the publication would be nothing more than the private act of the parties, and invalid. For this position, counsel cite Miller v. Hall, 3 T. B. Mon. 242, 243, and Galpin v. Page, heretofore cited. While it is true that where it is sought to affect a defendant by constructive

notice, the plaintiff should be held to a strict compliance with the statute authorizing such publication, yet we are to give a reasonable and rational construction to the evidence relied upon to show the fact of publication. The order of publication found in the record is manifestly the copy returned into court with the certificate of the publisher, as required by statute. That certificate is statutory evidence of the fact of publication, and is to be treated as the return of an officer. Miller v. Hall, supra. The certificate was in these words, and is dated October 13, 1823:

"I, Jacob H. Holman, editor of the Commentator, a newspaper published at Frankfort, in Kentucky, hereby certify that the annexed order of court, Henry Banks against Philip Henry Neving Tot Bastrop, etc., was published ten weeks in said paper."

The "annexed order" referred to is the order we have heretofore cited, and that order is shown to have been published for 10 weeks in the official paper. It must follow that the order was made before it could have been published. There is therefore no contradiction of the recital that an order of publication "had been duly made."

The next objection is that it is not shown that the order had been published for "two months successively," as required by the order and by the statute. This objection is not well taken. It was published for "ten weeks,"—a time in excess of two months. The publication had been completed when the certificate was dated,—October 13, 1823. It could not have been begun before July 18, 1823,—the date when the bill was filed. If the order for publication was made on the day of the filing of the bill, and the last publication made on the day the certificate was filed, there would be an interval of 12 weeks. Now, of course, it is possible that the publication may have been begun, and then abandoned for one or two weeks, and again resumed. But there is no evidence which operates to contradict the judicial finding, possibly based upon a knowledge of the date of the order made, or of the first or last day of publication, that the publication had been duly made and filed. Where the evidence found in the record is not inconsistent with a recital of jurisdictional facts, the recital cannot be regarded as contradicted.

The next and last objection pressed upon us is that the order of publication is void, as not being authorized by the statute. The order recites that, "it appearing to the satisfaction of the court that the defendants are not inhabitants of this commonwealth ❋ ❋ ❋." The statute provides for publication "on satisfactory proof ❋ ❋ ❋ that such defendant or defendants is or are out of this commonwealth," or could not be found on inquiry at his or their usual place of abode. The argument advanced is that one may not be "an inhabitant of this commonwealth," and yet be temporarily in the commonwealth, in such way as not to be "out of this commonwealth," in the sense of the statute. We think the legislative meaning of the words "out of this commonwealth" imply and embrace the case of one who is properly described as not "an inhabitant." "In law, the term 'inhabitant' is used technically with varying

meaning in respect of permanency of abode." Century Dict.   To be an inhabitant does not imply the relation of the inhabitant to the commonwealth.   It refers primarily to one's abode or residence for the time being.   If one is not an inhabitant, it is understood that he has no abode in the place spoken of.   To be "out of this commonwealth" implies, as we think, one permanently out, as a nonresident or noninhabitant, and that the act, by authorizing constructive service of notice upon one "out of this commonwealth," meant one who had neither domicile nor habitation within it.   The other clause of the act, authorizing publication for one who could not be found at his "usual place of abode," was intended to cover all cases of absence of an inhabitant from his abode.   The order in this case seems to have followed the usual wording of such orders, and to have been heretofore treated as a compliance with the statute.   The order of publication sustained in Applegate v. Mining Co., cited heretofore, was in the very terms now criticised.   For the error in excluding the record offered, the judgment must be reversed, and a new trial awarded.